##### AND THE

## CORRECTION OF ERRORS,

##### IN THE

## STATE OF NEW-YORK,

##### IN APRIL, 1814.

---

JOHN W. YATES,    *Plaintiff in error,*
    *against*
EBENEZER FOOT,    *Defendant in error.*

THIS cause came before this court on a writ of error from the supreme court. It was one of five causes depending on the same facts and principles, and decided at the same time, in that court. See *Vischer* v. *Yates*, (vol. xi. page 23.) for the facts and the judgment of the court below.

*Henry,* for the plaintiff in error, contended that the judgment below was erroneous, on two grounds. 1. That the suit was brought by one of the principals for his undivided proportion of the money in the hands of the stake holder.

Where money is deposited with a stakeholder, on the event of a wager by a person who acts as agent for several others, but the stakeholder is ignorant of the principals, on whose account the money is deposited, actions to recover back the deposite are properly brought in the name of the principals, (each of whom separately may sue for his respective proportion,) and not of the agent.

Where money is deposited with a stakeholder on an illegal wager, (as a wager on the event of an election,) no action lies after the event has happened, and the bet has been lost and won, by the loser against the stakeholder to recover back his deposite, which still remains in the hands of the stakeholder, and which he has had notice not to pay over to the winner.

*IN ERROR.*
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

* *Co. Litt.* 198
(a)

† 1. *Fonb. Equ.* 216, note (y) B. 1. ch. 4. sec. 4.

‡ *Comp.* 197— 190. and see *Smith* v. *Brom ley*, in *Doug.* 696. 670. note.

♦ 3 *Term Rep.* 236. 8 *Term Rep.* 575. 3 *East*, 222. *Doug.* 470. ‖ *Doug.* 696, 697.

♦♦ *Cro. Jac.* 271. 2 *Freeman* 182. *Caty's Ch. Rep.* 13.

2. That the contract was *malum in se*, and void, and no action could be maintained upon it, either to affirm or disaffirm the contract.

1. The law abhors multiplicity of suits. Persons holding in common should sue jointly.* If there had been a hundred deposites, by as many different persons betting on the same matter, would it be tolerated that each should bring his separate action against the stakeholder?

2. All contracts, illegal in themselves, or made so by express prohibition, are void, and incapable of being enforced, where the parties are *in pari delicto*. It is a rule both of law and equity, that *ex turpi causa actio non oritur*.†

In relation to such contracts, the true principle is, *ex maleficio non oritur contractus, et in pari delicto potior est conditio defendentis*. The principle is laid down, and the distinction properly made, in the case of *Clark* v. *Shee and Johnson*.‡ In regard to prohibitions by *positive* law, there are two kinds; 1st, where the prohibition is made to protect men from fraud, extortion, or oppression; and, 2d, where the prohibition is founded on principles of public policy. In the first, the rule *in pari delicto*, &c. does not apply, and an action will lie; but in the second, both parties are equally guilty, and the maxim applies that *in pari delicto, potior est conditio defendentis*. Where the transaction is illegal, no action will lie. The illegal contract can neither be *affirmed*♦ nor *disaffirmed*, so as to allow the party to recover back his money. The rule and the distinction are enforced and illustrated by Lord *Mansfield*, in *Smith* v. *Bromley*, and *Jones* v. *Barkley*.‖

The genius and spirit of the laws against gaming are in favour of this doctrine.

So, if a contract be in breach of faith, or of a trust, or for fraud, it is void. A deed to defraud creditors is void against creditors; but it may be enforced against the parties, who will never be relieved.♦♦ The parties are left remediless, to take away all motive or temptation to engage in such transactions.

The parties in the present case, *betters, agents, stakeholders,* and all, are *in pari delicto*. Not that there is an equal degree of guilt, for that is not the meaning of the rule; but they are all involved in the like guilt or turpitude, and are all concerned, more or less, in the same or like act.

In *Bunn* v. *Riker*,\* the court were of opinion not only that the wager was illegal, but corrupt; and Mr. Justice *Spencer* was also of that opinion, provided the bet was made before the poll was opened. Such a contract is in violation of the fundamental principles of the law and constitution: and the parties ought to be left where they are found, without remedy or relief.

The case of *Wilkinson* v. *Ketchic*,† cited by *Buller*,‡ is repugnant to the genius of the law, and the whole of the decisions,§ both before and since; and being also a mere decision at *nisi prius*, it cannot be regarded as any authority.

The case of *Laucassade* v. *White*,‖ in which a distinction is raised by the counsel between contracts executed, and not executed, seems to be shaken by the observation of Lord *Kenyon* himself, in *Howson* v. *Hancock*,\*\* who states a distinction between the two cases, which does not appear to exist.

In the case of *Cotton* v. *Thurland*,†† the grounds of the decision are not easily understood, as the judges appear to have had different views of the opinion of *Wilson*, J. in the case of *Cain* v. *Alder*, which, it seems to be the intention of the decision to contradict.

*Tenant* v. *Elliott*,‡‡ is a case of *malum prohibitum* only. There was no *moral* turpitude in the transaction. It is on that distinction the decision was founded. *Eyre*, Ch. J. said the defendant was not like a stakeholder. In *Farmer* v. *Russell and another*,§§ which was an action against common carriers, who had carried a parcel which contained counterfeit halfpence, to *Portsmouth*, and delivered them there, and received money for the plaintiff, for which assumpsit was brought; *Rooke*, J. before whom the cause was tried, told the jury, that if the halfpence were sent with a view to impose on the public, the contract was illegal, and no action could arise out of it, and a verdict was found for the defendants. Though a new trial was granted, on the ground that the defendants might have known the fact, of the boxes containing counterfeit money, yet *Rooke*, J. thought the knowledge or ignorance of the defendants made no difference. That the plaintiff ought not to be heard to make a claim in a court of justice, founded on a transaction for which he ought to be indicted. That he ought not to have the assistance of the law to recover the profits of his offence. That

*IN ERROR.*

ALBANY,
April, 1814.

YATES
v.
FOOT.
\* 4 *Johns. Reg.* 426.

† 1 *Ld. Raym.* 89.
‡ *Bull. N. P.* 132.
§ 1 *Falk.* 22.
*Doug.* 698.
*Cowp.* 792.

‖ 7 *Term Rep.* 535

\*\* 8 *Term Rep.* 575.

†† 5 *Term Rep.* 405.

‡‡ 1 *Bos. and Pull.* 3.

§§ 1 *Bos. and Pull.* 296.

IN ERROR.
•••••
ALBANY,
April, 1814.

YATES
v.
FOOT.

if he employed an agent in such a transaction, he must rely on the honesty of such agent; but the law ought not to assist him.

Here the stakeholder is not, in fact, innocent, but a *particeps criminis*. Suppose an action were brought to recover money held by a third person, subject to be paid in case of a proposed assassination, is it possible that any court would listen for a moment to such a claim, to recover the money from the stakeholder? In all such transactions, arising *ex turpi causa*, there is not, nor can there be, any *locus penitentiæ*, of which the party can avail himself.

*J. Russel*, contra. 1. The rule as to actions by tenants in common does not apply to this case. There was no community of interest among the different plaintiffs, each of whom deposited his own money. Where two joint assignees each advanced money for a third, it was held that they could not bring a joint action, but must sue separately.* One tenant in common may distrain for his share of the rent.

2. We do not deny the rule, that where both parties are *in pari delicto*, courts will not afford their assistance; but this rule is applicable only to a transaction *malum in se*, or where an illegal contract is sought to be *affirmed*. In cases of moral turpitude or fraud, it is not expected that courts of justice are to lend their aid to enforce the contract. But it is a distinct case, where a party who has paid his money, seeks to recover it back, on the ground that the contract is incapable of being enforced. *Comyn*, in his treatise on contracts, after laying down the general rule,† states in what cases money paid on illegal contracts may be recovered back.‡ He thus lays down the general rule, and the distinction for which we contend, as deduced from the cases decided: " When money has been paid upon an illegal contract, it is a general rule, that if the contract be *executed*, and both parties *in pari delicto*, neither of them can recover from the other the money so paid; but if the contract continues *executory*, and the party paying the money is desirous of rescinding it, he may do so, and recover back his deposite.§ And this distinction is taken in the books, namely, where the action is in *affirmance* of an illegal contract, the object of which is to enforce the performance of an engagement prohibited by law; such an action can in no case be maintained: but where the action proceeds in disaffirmance of such a contract, and, instead of endeavour-

*3 Bos. and Pul.
235.   5 East,
224   1 Saund.
153.   5 Term
Rep. 246.

† 1 Comyn on
Contracts, 30—
46.
‡ 2 Comyn on
Contracts, 109.

§ Doug. 470.
Comp. 199, 200.
792.

ing to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, there it is consonant to the spirit and policy of the law that the plaintiff should recover."* There are some cases, however, notwithstanding the contract is executed, in which the party who has paid the money, will be allowed to receive it back, on principles of public policy, in order to prevent a repetition of crimes, or the evasion of a statute.

The case of *Clark* v. *Shee and Johnson*, was decided in 1774. The ground on which the plaintiff's right of recovery was placed, was, that he was not *particeps criminis;* and Lord *Mansfield* was, *at first,* of opinion that he was a party to the illegal proceeding; but he afterwards thought otherwise. In *Browning* v. *Morris,*† he gave a different construction to the *Lottery act,* on the authority of the case of *Jaques* v. *Golightly,*‡ which does not afford the ground of decision assumed by his Lordship; but the person who got the tickets insured, was held not to be *particeps criminis.* All the cases subsequent are in favour of recovering back money paid, where the contract is void, as against public policy, or against a statute, if such contract has not been executed, and the plaintiff seeks to *disaffirm* the contract.

It is true the evils produced by betting on elections may be great; but greater evils would be produced, by adopting the rule contended for by the plaintiff in error. Bets of this kind originate in party zeal, and the impulse of passion; but if the parties, on cool reflection, are desirous to retract, ought this to be discouraged by saying the stakeholder shall not be obliged to return the money?

In *Jaques* v. *Golightly,* and *Tappenden* v. *Randall,*§ the illegal contracts were *disaffirmed,* and the party allowed to recover back his money. The case of *Tenant* v. *Elliott,* and *Farmer* v. *Russel,*‖ go farther than the present case; the third party was not a party in interest, though the others were highly criminal. The rule that *in pari delicto,* &c. does not apply to the *depositaries,* &c. but only to the contracting parties.

In *Lowry* v. *Bourdieu,* the court denied aid to the plaintiff solely on the ground that the contract was executed; and in *Wharton* v. *Delaire,*** tried before Lord *Mansfield,* in 1782, though the contract was illegal and void, he admitted that the

IN ERROR.
......
ALBANY,
April, 1814.

YATES
v.
FOOT.
* 1 *H. Bl.*
*Rep.* 67.

† *Comp.* 790.
‡ *Wm. Bl.*
*Rep.* 1073.

§ 2 *Bos. and*
*Pull.* 467.

‖ 1 *Bos. and*
*Pull.* 3, 296.

** *Park on Ins.*
(6th ed.) 518.

*IN ERROR.*

• • • • •

ALBANY,
April. 1814.

YATES
*v.*
FOOT.

* 11 *East*, 427.
12 *East*, 225.
† 7 *Johns. Rep.*
434.

‡ *Esp. Cases*
*N.. P.* 629.
See also 1 *East*,
96.

plaintiff might recover back his money, because the contract was *executory*.

There is so much contradiction in the English decisions as to the *return of premium*, in cases of illegal insurances,* that the supreme court, in *Mount and another* v. *Waite*,† thought themselves at liberty to lay down a rule for themselves, and they held that the insured was not *in pari delicto*, and might recover back the premium he had paid. On the same principle, that court held, that the stakeholder should not hold the money in defiance of both parties. So long as the money is in his hands, he shall not be allowed to set up in his defence, that the contract is illegal.

The case of *Lacaussade* v. *White*, from the declaration as stated in *Espinasse*,‡ and 7 *Term Rep.* would lead to the opinion that it was an action brought by the winner of a bet against the loser; but Lord *Kenyon*, in *Howson* v. *Hancock*, said it was an action to recover the money deposited with a stakeholder, before it was paid over, which distinguished it from that case where the money had actually been paid over.

The contract, in the present case, was not *executed*. The result on which the bet depended, was not ascertained; for it was not whether Gov. *Tompkins* was to have the greatest number of votes, but whether he would be declared, by the certificate of the canvassers, duly elected. Though the votes were returned, the defendant did not know how the canvassers would declare the result.

Again; the contract could not be considered as executed, if the other party could have an action to compel its execution. If *Yates* had refused to pay the money to the winner, no doubt he might have brought his action to enforce the performance of the contract.

There was not, in the present case, any thing like fraud, or criminality, or collusion. We insist that there was not in the transaction any of that moral turpitude that would make the act *malum in se*. Similar cases are to be found in the books, but none of them have been considered in that light. They have regarded them merely as contracts against public policy, or as *mala prohibita*. So, in *Burn* v. *Riker*, the court do not consider the wager as corrupt, but such as, in *England*, is regarded as illegal, as being against sound policy.

IN ERROR.
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

*T. A. Emmet,* in reply.   1. The persons or principals who deposited their money were partners in the gain or loss.   The deposite was of an entire or joint fund.   It does not appear how much was owned by either.   The stakeholder received a mixed and undivided fund, and he must return it to *Alexander,* the agent, entire and undivided.

2. Two positions have been taken, in regard to this action; first, that while the illegal contract remains unexecuted and undetermined, the principal may recover his money out of the hands of the stakeholder; and second, that after the risk has been run, it may be recovered back either from the winner or stakeholder.

We admit the first position in part, or with the exception of the cases where the contract is illegal, as against a statute, or where it is illegal, on account of its evil and immoral tendency, or is *malum in se.** The distinction taken by *Heath,* J. in *Tappenden* v. *Randall,*† between contracts immoral, and such as are grossly criminal, rests on his *dictum* only.

*Doug. 471.
†2 Bos. & Pull. 467. 471.

Money paid on a contract for murder, seduction, bribery, perjury, corruption, or any immoral act, can never be recovered back by the aid of a court of justice.   It can never depend on the degree of moral turpitude.   Such contracts are not illegal and void because they are *grossly* dishonest and immoral, but because they are dishonest and immoral, and *contra bonos mores.*

In *Edgar* v. *Fowler,*‡ Lord *Ellenborough* says, in general terms, that the court would not assist an *illegal* transaction, in any respect; he does not put this case on the distinction between *malum in se,* or *malum prohibitum.*  While the money was *in transitu* to the person who was entitled to receive it, it might be stopped; but if the party applies to the court, they will leave the matter as they find it.

†3 East, 222.

*Bunn* v. *Riker,* and the authorities there cited, clearly show that a contract like the present is immoral.

The distinction that the immorality which avoids the contract is the *commission* of the act, and not, in regard to a wager, that the act will be committed, can never be listened to in a court of justice.   If a person lays a wager that he can seduce a married woman, the contract is void, and no court would ever aid the party to *affirm* or *disaffirm* the contract.   The contract, on account of its necessary evil tendency, is immoral in itself, and

*IN ERROR.*
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.
* 5 *Term Rep.*
405.

†See 1 *Salk.*22.
*Skinner,* 412.
*Doug.*697.*note.*
*Comp.*792.con-
tra.    1    *Ld.*
*Raym.* 89.   2
*Evan's Pothier,*
7.   2 *Com. on*
*Cont.* 127.  3
*Esp. Rep.* 253.
‡ 7 *Term Rep.*
535.

void. The certainty of the rule, in this respect, is important; and its certainty depends on such contracts being void for their immorality and bad tendency, not on account of the *degree* of the immorality.

The case of *Cotton* v. *Thurland,** it is said, has not been contradicted by any subsequent decision. That case has been so variously stated and understood, that it can be no guide to a court,† nor is it to be regarded as an authority in point; nor is the case of *Lacaussade* v. *White*‡ any better authority. It is a case so imperfectly reported, and so variously stated and understood, as to be entitled to no weight. It was, no doubt, a case of a *winner*, seeking to recover money won by a bet, in no respect *immoral*, but merely against public policy. *Jaques* v. *Golightly*, was of the same nature. So that this case, so much relied on by the counsel on the other side, has no more application to the present case than if it had been an action of ejectment.

It is admitted that the plaintiff below could not recover back his money from the winner, or the other principal; but it is contended that the defendant, not being *in pari delicto*, the maxim does not apply to him. The true meaning of the rule is, that where both parties are, in any manner, *in delicto*, or concerned in the same act, the possessor has the best right to the money.

If two persons, as in the present case, will bet on an election, where there are great inducements to bribery and corruption, it would be better that the money should be cast into the sea, than that it should be recovered by either party. If it is once known by the parties to these illegal contracts, that in no stage of the transaction, courts will aid them in recovering their money, it will deter them from entering into such agreements; for, unless the stakeholder *voluntarily* returns the money, it must be absolutely lost to the parties. It is in this way courts of justice will promote the cause of morality and honesty, by checking such immoral practices, not by technical notions of illegality.

The certificate, however, shows that *Yates* is, in fact, a party to the contract. He is *particeps criminis*. Lord *Kenyon*, in *Howson* v. *Hancock*, says there is no case to be found where money has been paid by one of two parties to the other, both being *participes criminis*, that an action has laid to recover it back again. And Lord *Mansfield*, in *Smith* v. *Bromley*, said

IN ERROR.
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

that where both parties are equally criminal against the general laws of public policy, the rule is *potior est conditio defendentis.*

The distinction between the stakeholder and the principal is fanciful, without any rational foundation, or moral principle to support it. It originated in a *dictum* of Lord *Kenyon,* in *Cotton* v. *Thurland,* a case so much mistaken and misunderstood, and has been adopted as a rule of law by subsequent compilers, who faithfully copy such mistakes.

The distinction between contracts *executed* and *executory,* can make no difference, except in regard to contracts void as being against public policy or a statute. It does not apply where the contract is, in itself, immoral. The honesty or dishonesty of the contract is not to be ascertained by the event, or by the risk being run.

The agreement was that *Yates* was to pay the money to *Parker* " in case *Tompkins* was elected governor." The governor is elected by the votes, not by the canvassers of those votes. And after all the votes were taken, and the polls closed, the risk was run, and the plaintiff, on the 31st of *May,* before the date of the certificate of the canvassers, knew, by the returns of the votes, that *Tompkins* had a majority. The event of the decision of the canvassers, at the time the plaintiff demanded his money back, can have no effect on the *honesty* of the retraction.

SANFORD, Senator. It is urged that an action to recover this demand ought to be in the name of the agent who paid the money to the stakeholder; or, if not, that it should be a joint suit by the principals.

The money was advanced by the plaintiff, and was paid to the depositary, by a person who was the mere agent of the plaintiff. In such cases, the principal, adopting the act of his agent, may institute an action, and pursue the remedy in his own name.

The principals were not partners, and were not connected with each other, in interest or by any contract; nor does it appear, that they were at all known to each other. Each person advanced his own money, and they all employed the same agent, for the same purpose. This does not appear to constitute a joint interest in the principals, or to create any contract

IN ERROR.
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

or obligation between them. Their interests being distinct, their suits concerning those interests should be separate.

These objections, therefore, appear to be destitute of any just force.

In contracts of wager upon the event of an election, the courts will not entertain an action to enable the winner to recover the wager from the loser ; but if the loser has voluntarily paid the wager, they will not entertain an action to compel the winner to repay the money to the loser.

These two principles appear to have been long and clearly established, by decisions of the courts.

By the first, the courts defeat wagers of this kind, where the loser has not performed his contract.

By the second, the courts give effect to wagers of this kind, where the loser has performed his contract.

I will briefly inquire into the foundation and reasons of this distinction.

When the courts are asked to compel the loser to pay to the winner, they answer that the contract is against public policy, and for that reason ought not to be enforced.

When the loser has paid the wager, and the court are applied to, to compel the winner to repay it, they answer, that the contract has been executed, and ought not to be disturbed.

Thus the courts refuse to entertain any action, on the subject, either by the winner against the loser, or by the loser against the winner.

It also appears, that whatever may be the weight of the consideration of public policy, it is not sufficient to induce the courts to compel the restitution of a wager, voluntarily paid. If, however, legal decisions can repress contracts of this kind, that effect would be best produced, by compelling the winner to make restitution to the loser, though the loser had voluntarily paid. In other words, the object of public policy would be most effectually attained, by reversing the performance of the executed contract.

Yet this the courts have never done, and have never attempted to do.

The same distinction is made in a multitude of other cases. There are contracts, rights, and obligations, which the law does not enforce. It would be against the policy of the law to enforce them. Yet, where the party, bound by such a contract

IN ERROR.
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

or obligation, voluntarily performs what he had promised to do, the courts ratify his acts, and will not suffer him to retract. When a man pays a debt which he was not legally bound to pay, or performs his contract, though it was void in law, he cannot afterwards recede and annul what he has done. The courts will not compel a man to pay a debt of honour; but if he will voluntarily pay it, they will not permit him to reclaim the money. In all these cases, though the courts will not compel the execution of the contract, yet they recognise the execution of the same contract, as justice, when it is freely administered by one party to the other. The maxim applied to such cases is, *fieri non debet, sed factum valet.*

The essential reason of this distinction appears to be, that the performance of the contract by the party who promised, is a voluntary act. He had an option to perform or not; he has voluntarily performed, and he shall, therefore, not be allowed to retract that voluntary act.

In this case, the payment to the depositary was voluntary. The money remained a voluntary deposite in his hands, until after the hazard had ceased, and the event was known. The losing party then reclaimed the money which he had advanced, and he now seeks to recover it in this action.

This contract, then, appears to be partly executed, and partly unexecuted. The deposite of the money with the stakeholder, was the first step in the execution of the contract. It was, indeed, intended by the principals, to be the execution of the contract against themselves. The unexecuted residue of the contract was to be completed by the occurrence of the contingent event, and the payment of the money by the stakeholder, according to the event. The parties acquiesced in the contract and the deposite, until the contingency happened, and a month afterwards, and until the result of the election was known. The payment of the money to the stakeholder, the occurrence of the event, which was to give it to one party or the other, and the acquiescence of both parties in the contract and the deposite, constitute a partial execution of the contract. Shall this partial execution of the contract be vacated? The doctrine of the courts in other cases is, that what the parties have done shall stand; and what they have not done shall be left unexecuted. The application of that doctrine to this case seems to be, that so far as the contract has been performed by the parties, their perform-

ance shall stand; and so far as it has not been performed, it shall be left without legal aid to enforce it. As to the winner, the contract, indeed, is not fully executed, since he has not received the deposite. As to the loser, and against him, the contract is totally executed; since no further act is necessary, or can take place, on his part, to give it effect, or carry it into execution. His execution, therefore, of the contract, is valid against himself, and cannot be retracted.

In contracts of hazard, the condition of the parties, after the uncertain event has happened, is extremely different from their situation before. Before the event has happened, and while it is uncertain who will be the winner, or the loser, neither is much injured, and perhaps not at all, by declaring the contract void. The parties are treated alike; neither of them can complain; and if it be necessary for the public good, that the contract should not proceed farther, the decision is made without any sacrifice of justice between the parties. Not so, if the hazard has ceased, and the wager has been lost or won, according to the contract. A very different relation between the parties then takes place. If the losing party may vacate his contract, after the event has happened, and is known, he is allowed to practise a fraud upon the adverse party. To allow the loser to retract his contract, because he is the loser, would give sanction to the grossest perfidy and injustice. If this party wins, he profits by the contract, and takes the fruit of it; if he loses, he abjures the contract, and exonerates himself from its obligation: if he wins, he holds the wager by the laws of honour; if he loses, he refuses payment, or reclaims the wager, if paid, by the laws of the land. According to the result, he avails himself, either of the laws of honour, or of the laws of the land. While the event is uncertain, and unknown, he stands upon the laws of honour. When it has happened, and is against him, he retires to the laws of the land. When he contracts upon the basis of hazard, he incurs no risk. While he is himself wrapped in impenetrable armour, he contends with a naked adversary. When he talks of contingency and hazard, he means certainty. When he promises, he deceives; and while he pledges his faith, he betrays. It does not help such treachery, to give it the name of repentance. There is no instance of such a repentance by the winner. It is only the loser who repents. However bitter and sincere his repentance may be, it is not that he has offended against public

policy, but that he has lost his money. To prove the sincerity of his repentance, and as an atonement for his sin against public policy, he proposes to cheat his adversary, and take back his own money, after it has been lost.

*IN ERROR.*
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

This is intolerable, and has never been tolerated. It never will be tolerated, while common sense and common honesty hold their proper dominion among mankind.

It has, accordingly, become a rule, in those cases in which the parties are allowed to rescind the contract, that it can only be rescinded before the contingent event happens. The happening of the event is the crisis in the contract, which terminates all election, option, or repentance. Before, the parties stood on the ground of uncertainty, and either might recede. Now, they stand on the ground of certainty, and neither can retract what he has done. This is law, clearly established by adjudged cases.

In this case, the attempt to retract was not made until the result of the election was known, and a month after the event had taken place. The attempt therefore cannot prevail.

By allowing this action, the losing party would be allowed, after the hazard has ceased, and the event is known, to retract what he had done before. Such a decision would be inconsistent with the principle, that a voluntary performance shall not be retracted, and inconsistent with the principle that there can be no election to vacate the contract, after the uncertain event has happened, and the fact is known. These principles, just in themselves, and fully established as law, appear to me to be directly applicable to this case, and to determine it.

A stakeholder was here employed; and this action is against him. Whether the action of the loser is against the winner or the stakeholder, the loser, in either case, equally seeks to retract his own acts. To allow the action against the stakeholder, after the hazard has ceased, and the event is known, would have the same effect as to allow it against the winner, in the same circumstances. When the uncertain event takes place, all election or option to treat the contract as void, ceases, for reasons which have been stated. Those reasons exist with as much force, where a stakeholder is employed, as in any other case. The just regard to probity and good faith, and the necessity of preventing fraud, which forbid the parties to retract after the event, forbid it as strongly in one case, as in another. The

fact that the money is in the hands of a third person, cannot give the loser a right to retract after the event. The election to rescind the contract depends altogether upon the time when it is made. The circumstance of employing a stakeholder cannot determine at what time the election may be made ; and it has no influence upon that question.

It is said, that the depositary has no right to hold the money advanced by the loser, against him. Has he not as good a right to hold it, as the loser has to claim it? If the depositary cannot hold the money with conscience, can the loser reclaim it with conscience ? If conscience will repel the defence, will it not repel the action ? This is an action for money received by the defendant, for the use of the plaintiff, in which, we are told, the plaintiff is to recover according to equity and good conscience. What may be the merit or demerit of the defence, is immaterial, if the claim, which is the foundation of the action, be itself destitute of merit. What is the plaintiff's right? It is said, that the contract, upon which the money was paid, was illegal ; and that, consequently, the money is held, without any obligation arising from the contract. Admitting this, where is the obligation to refund it? The answer is, that, as the money was not paid to the depositary for his own use, and as he is not bound to apply it according to the contract, it must revert. In other words, the illegality of the contract defeats the intention of the parties, and deprives them of rights which they intended to confer, and therefore gives them rights which they had no intention to create. This does not appear to be a necessary conclusion. If the contract be illegal and void, the sound conclusion would seem to be, that no right whatever could result from it, and, consequently, that he who has paid his money upon a void contract, would have no remedy to recover it. But in this case, the contract, however illegal or voidable it may once have been, was capable of being affirmed by the acts of the parties, and by their acquiescence in it, until it was too late to retract. It was so affirmed by them, and no right which might result from a disaffirmance, can accrue to either of them.

We are told, that public policy requires that this action should be allowed. I recollect no instance in which an executed contract of hazard has been frustrated, on the ground of public policy, excepting the particular cases, in which certain statutes authorized the loser to reclaim what he has paid. These

IN ERROR.
.....
ALBANY,
April, 1814.

YATES
v.
FOOT.

are the statutes concerning gaming and horse-racing. By the express provisions of those statutes, the loser, having paid, may recover back the money, by an action of debt. Contracts of gaming, and concerning horse-racing, are the only two classes of hazardous contracts, which have been deemed of sufficient importance to deserve the interference of the legislature. The object of the statute is, to repress and prevent those two species of contracts; and evidently on grounds of public policy. All their provisions are either in addition to the law, as it was before, or in alteration of the former law. The provision, that the loser, who has paid his wager, may reclaim it, a rule unknown to the common law, was evidently introduced in those statutes, to give a right which did not exist before. Even in these cases, therefore, which the legislature considered of such importance as to require very penal provisions for the attainment of their object, and the only cases in which they have interposed, they deemed it necessary to authorize the loser to reclaim his wager, after it has been paid, as an alteration of the common law. Before these statutes, these cases stood on the same ground as other contracts of hazard. If the loser had paid his money, it was lost to him. Such was the undoubted doctrine of the common law in these cases; and yet the public policy of suppressing mere games of chance, seems to be far stronger and more urgent, than any public reasons for suppressing other hazardous contracts. The courts, however, did not compel, or attempt to compel, restitution to the loser, on the ground of the public policy of such a decision. These statutes are, therefore, to be regarded, as they are, alterations of the common law, in this respect. They show what the common law was; they confine the alteration to particular cases, and they show that it is the province of the legislature, and not of the courts, to alter the existing law on this subject, to accommodate it to the exigencies of public policy.

The mischiefs which may result from wagers upon elections, have been placed before us in glowing colours. If it be said, or meant, that such mischiefs have occurred in this state, I deny the assertion. Whatever may be the tendency of such wagers to induce the parties to vote according to their interests, or to obtain the votes of others, we have not yet seen any corrupt or pernicious influence upon our elections, arising from such a

*IN ERROR.*
.....
ALBANY,
April, 1814.
YATES
v.
FOOT.

cause. The mischief apprehended does not yet exist. The virtue of the people has secured us from the evil. If the mischief has not already occurred, we may safely conclude that the apprehension of danger in future is, in some measure, imaginary. But if, in the progress of society, the mischief should be seen and felt, a proper corrective must be applied. In the future days of the republic, it may become necessary. The legislature are, and ought to be, the judges of the disease, and the remedy. It is their province to observe the evil when it occurs, to watch its progress, and estimate its magnitude, and to provide an adequate remedy. It belongs to the legislature, and not to the courts of law, to provide for the exigencies of new times, and circumstances, and to lay down new rules, for the suppression of new vices. The consideration of public policy, which has been so much pressed, should be addressed to the legislature, and not to the courts. If the law applicable to this case has been settled by established principles, the courts cannot now alter it, because a different rule would, in their opinion, better comport with public policy.

My opinion, therefore, is, that this action cannot be maintained, and that the judgment of the supreme court ought to be reversed.

LEWIS, WILKIN, BLOOM, HUBBARD, BLOODGOOD, STRANAHAN, ROOT, and ELMENDORF, and six others, Senators, were also of opinion that the judgment of the supreme court ought to be reversed.

P. W. RADCLIFF, YATES, WENDELL, ATWATER, STEWART, and TOWNSEND, Senators, were of opinion that the judgment ought to be affirmed.*

It was ORDERED and ADJUDGED, that the judgment of the supreme court be reversed, &c. and that the said *J. W. Yates* be restored to all things, &c. ; and further, that judgment be entered for the said *J. W. Yates* on the special verdict, together with his costs about his defence sustained in the supreme court ; and further, that the said *J. W. Yates* recover against the said *Ebenezer Foot* his costs of prosecuting the writ of error in this cause,

IN ERROR.
....
ALBANY,
April, 1814.

to be taxed by one of the members of this court; and that the plaintiff in error have execution therefor; and that the record be remitted, &c.

(a) The like judgment was given in *Yates v. Vischer*, and in the three other causes.