DENNISTON *against* COOK.

A. and B., being qualified electors for governor, a few days before the polls were opened, laid a bet on the event of the election for governor, and deposited their respective checks on the bank, for the amount, payable the 1st of *June*, with a stakeholder. When the result of the election was generally known, but before the official canvass of votes was declared, B., supposing the wager lost, withdrew all his money from the bank; and his check, which had been delivered over by the stakeholder, after the official canvass, to A., on being presented at the bank, was refused payment. In an action brought by A. against B., to recover the amount of the check, it was held, that th contract being illegal, no action would lie on the check given for the wager, nor for money had and received to the plaintiff's use.

THIS was an action for *assumpsit*, to recover the amount of a check on the bank of *Albany*, for 200 dollars.

A few days before the election of governor, on the last *Tuesday* of *April*, 1813, the plaintiff and defendant deposited with J. *Alexander*, their respective checks on the bank, for 200 dollars each, dated the 24th of *April*, and payable on the 1st of *June* then next, to abide the determination of a wager on the election; the terms of which, as stated by the witness, were, that the defendant bet 100 dollars, with the plaintiff, that *Stephen Van Rensselaer* would have a majority of 5,000 votes over *Daniel D. Tompkins*; and another 100 dollars, that *Stephen Van Rensselaer* would have a majority of votes over *Daniel D. Tompkins*. On the official canvass of the votes, for governor, being made known, *Alexander* was to deliver the checks to the defendant, in case S. *Van Rensselaer* was elected governor by a majority of 5,000 votes; or to the plaintiff, in case *Daniel D. Tompkins* was elected; but if S. *Van Rensselaer* was elected by a majority of votes less than 5,000, the check of each party was to be returned to him.

About the middle of *May*, and before the official canvass of votes was published, but after it was well known, from public information of the result of the canvass, how the election had terminated, the defendant gave *Alexander* notice not to deliver up his check to the plaintiff. But immediately after the result of the canvass was officially announced to the public, and *D. D. Tompkins* was declared to have been elected governor, *Alexander*, on being indemnified by the plaintiff, delivered the checks to him.

At the time the wager was laid, the defendant had deposited in the *Albany* bank, more than 200 dollars; and such deposite continued until after the result of the election was generally known; but before it was officially declared; and the defendant withdrew the deposite, expressly for the purpose of defeating the payment of this check, alleging that he had laid the bet as the agent of a third person, who had refused to assume it.

When the check was presented by the plaintiff, at the bank, payment was refused for want of funds.

It was agreed that, if the court should be of opinion that the plaintiff was entitled to recover, the defendant should give a cognovit actionem for 200 dollars, on which judgment should be entered; otherwise, a judgment of nonsuit was to be entered.

*Van Vechten*, for the plaintiff, relied on the case of *Yates* v. *Foot*, (*ante*, p. 1.) decided in the court of errors.

*Hale*, contra, insisted, that the wager was illegal and void, and cited *Bunn* v. *Riker*,[*] and *Lansing* v. *Lansing*.[†]

[*] 4 Johns. Rep. 426.
[†] 8 Johns. Rep. 454.

Spencer, J., delivered the opinion of the court. The case does not state the particular counts contained in the declaration. It is presumed there are counts on the bet, and for money had and received.

It was admitted, on the argument, that the plaintiff had the qualifications of an elector of governor. This admission is decisive against the action upon the wager. It was held, in *Bunn* v. *Riker*, 4 *Johns. Rep.* 426., that where either of the parties was an elector, the wager was illegal, on the ground that it was corrupt, and against the fundamental principles of the constitution.

I can perceive no ground for the argument, that the money which the defendant had in the bank of *Albany* is to be considered as the plaintiff's money. There was no appropriation of this money, either by the bank, or the defendant, to the plaintiff's use; and, before the plaintiff had a right to demand the sum won, the defendant had withdrawn his deposite from that bank. From what motive this was done, is immaterial; it was not, in any sense, the plaintiff's money.

It appears to me to involve an absurdity to say that the plaintiff can maintain this action as for money had and received, when, confessedly, he cannot sustain an action upon the check which the defendant gave to him; on the ground that it is void, as being an illegal transaction. This case is very different from that of *Foot* v. *Yates*, in error. There, the party who had lost the bet sought to recover against the stakeholder; here, the party winning the bet seeks to recover on the ground of the wager. It is very difficult, from the manner of deciding cases

in the court for the correction of errors, to ascertain the precise principle adopted by the court. The only opinion reported in the case, is that of *Sanford*, senator. Whether that was adopted by the majority of the members, is uncertain. The substance of his opinion is, that courts ought not to entertain suits, in such a case, either by the winner or loser; and, so far as respected the loser, he considered the contract executed, and he applied the maxim *fieri non debet, sed factum valet.*

It may be confidently affirmed, that no principle was adopted, in that case, which countenances the present action.

Judgment for the defendant.