# HARDY v. HUNT.

A party placing money in the hands of another for the purpose of making a bet on an election, in the name of the bailee, but for the benefit of the bailor, may retract the illegal act of making the bet, and does not forfeit the money by reason of the illegality of the purpose for which it was deposited.

The bailor does not part with the ownership by allowing it to be used for his benefit, though in the name of another. The money in the hands of the agent remains, as between him and the principal, the money of the principal.

Upon the retraction of the wager, the right to the possession of the money is in the agent or bailee, and he may maintain an action for it where the bailor interposes no objection.

Nor can an attaching creditor of the bailee, levying on the money in the hands of a stakeholder with whom it had been deposited by the bailee, claim that the bailor is estopped by having allowed the bailee to use the money in his own name, when the specific money was in question and could be distinguished. The creditor had not been misled by acts or declarations of the bailor, nor had he given credit to the bailor by reason thereof.

The stakeholder being informed of the rights of the bailor, was bound to protect those rights by resisting, in some way, the proceedings against him as a garnishee, the bailor being no party thereto; nor will he be protected by a judgment improperly entered against him, ordering him to pay the money to the attaching creditor.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

The facts are, that some time in August, 1857, plaintiff gave one O'Brien a check upon a banker, payable to the order of O'Brien, for five hundred dollars. This was done to enable O'Brien to bet that sum with one Harris on the election for Sheriff of Sacramento County. O'Brien undertook to make the bet for plaintiff — the plaintiff charging O'Brien to make the bet in his (O'B.'s) own name, and not disclose the plaintiff's connection with it. O'Brien drew the money on the check and put it in his pocket, together with a small amount of his own, and made the bet. It was agreed that O'Brien and Harris should deposit with the defendant, Hunt, a check on the bank for one hundred dollars each as a forfeit, and the other four hundred dollars should be deposited with Hunt, as stakeholder, on the following Monday. O'Brien then deposited four hundred dollars with Hunt, to be held by him, as stakeholder, in the event that Harris put up his four hundred dollars on the day named. The terms of the bet were reduced to writing — parties appearing to be Harris on the one side, and O'Brien on the other — the paper being signed by both of them.

Afterwards, and before the election, attachments issuing out of a Justice's Court against O'Brien were served upon Hunt, under the 126th section of the Practice Act. By agreement between O'Brien and Harris, the latter was permitted to withdraw his five hundred dollars from the hands of Hunt. After the attachment was levied upon Hunt, he was informed by O'Brien that the bet was made for the plaintiff, and Hunt replied that he had suspected as much all along. The suits against O'Brien, in the Justice's Court, went to judgment; and upon proceedings supplementary to execution, Hunt was cited before the Justice by whom the judgments had been rendered. At this examination Hardy desired to appear by counsel, but was informed by the Justice that he had no standing in Court. When Hunt appeared before the Justice he was aware of Hardy's position. Upon a statement of the facts, Hunt was ordered to pay over, and did pay over to the judgment creditors of O'Brien, the sum of four hundred and twenty-two dollars and thirty cents, and the balance of the five hundred dollars he paid over to plaintiff, without prejudice to the merits of this controversy.

The questions raised upon this state of facts are these : *First*, can Hardy maintain an action for this money deposited by O'Brien in his own name ? *Second*, is Hunt protected by this judgment of the Justice of the Peace in paying over the money ?

*Winans* for Appellant.

1st. No action can be brought by the plaintiff against the stakeholder after the event has been decided. See Vischer *v.* Yates, 11 Johns. 23.

The action was brought by the loser to recover back his deposit, not by the winner.

The decision of Kent, C. J., in that case, that after the event the loser might recover back his deposit from the stakeholder, was subsequently overruled, and the doctrine laid down, that after the event no action could be maintained against the stakeholder by either party. Yates *v.* Foote, 12 Johns. 10, 15 ; Ruckman *v.* Pitcher, 1 Comstock, 401, 402, 403, *et seq.;* Bunn *v.* Riker, 4 Johns. 428 ; Rust *v.* Gott, 9 Cowan, 173 ; Dewmiton *v.* Cook, 12 Johns. 376 ; Ball *v.* Gilbert, 12 Metcalf, 397 ; Corley *v.* Berry, 1 Bailey, (S. C.) 593.

2nd. Defendant's liability to the creditors of O'Brien was established:

I. By his answer to the Constable when garnisheed, that the money was O'Brien's.

II. By the testimony which he gave, and in accordance with the facts was compelled to give, on his subsequent examination before the Justice, under proceedings supplementary to execution; and

III. By the judgment rendered against him on such examination. Jackson v. Bank of U. S., 10 Penn. State Rep., p. 61, and Drake on Attachments, sec. 469.

3d. A party who permits another to deal with property as if such property were that other's own, is compelled to lose it if that other person sell it or so dispose of it as to place it beyond that party's reach.   Dyer v. Pierson, 3 B. & C. 38 ; Borson v. Coles, 6 Maule & Sel. 23, 24 ; Williams v. Burton, 3 Bing. 169.

4th. Plaintiff having instructed O'Brien to simulate ownership of the money, and O'Brien's creditors having been thereby induced to seize it as his property, plaintiff is estopped by his own act from now setting up ownership in himself.   Mitchell v. Reed, 9 Cal. 204.

5th. There is no privity of contract between plaintiff and defendant.

Plaintiff having drawn his check in favor of O'Brien, which O'Brien endorsed and drew out the money from the bank, thereby made that money O'Brien's own, and O'Brien thus became a debtor to plaintiff for the same ; and having, subsequently, deposited it with the stakeholder as his own and not as a special deposit, plaintiff cannot pursue the said money as a fund, nor hold defendant liable for having paid it over to O'Brien's creditors, in obedience to the judgment rendered by the Justice against defendant.   The mere casual notice from plaintiff to defendant in the Court room of the Justice, that the money belonged to him, could not create a privity of contract between them. Argenti v. Brannan, 5 Cal. 351, 353.

*Smith & Hardy* for Respondent.

In the case cited by counsel from 12 Metcalf, 397, the Supreme Court of Massachusetts, so far from sustaining his position, decides emphatically that, " *in no proper sense* can the stakeholder be regarded

as a party to the illegal contract, or *in pari delicto*. He is a mere depository of both parties, &c." 12 Metcalf, 402, 403.

In Massachusetts the Supreme Court held: "That an action for money had and received would lie for each party for the amount deposited by him." Ball *v.* Gilbert, 12 Metcalf, 403, 404.

The opinion of Senator Sanford in Foote *v.* Yates, cited by counsel, 12 Johnson, is a happy commentary upon the *justice* of this plea, and we think with that Senator that the plea " never will be tolerated while common sense and common honesty hold their proper dominion among mankind."

As to defendant's liability to the creditors of O'Brien, we hardly deem it worthy serious consideration.

If O'Brien were the agent of respondent, and by virtue of such agency the deposit could be claimed by respondent, O'Brien's creditors certainly could not attach it.

The fact that O'Brien was in possession of the money, and that *he* called it his, did not give any rights to persons who were not misled by some act of respondent. Black *v.* Zachariah, 3 Howard, (S. C. R.) 511.

In " The United States *v.* Vaughn, 3 Binney, 394," an attachment had been levied on shares of stock standing on the books of the bank in the *name* of the debtor, but the stock belonged to other parties. The decision was that the attachment was improperly levied and therefore was defeated.

In this case there is no pretense of fraud or injury. No suspicion of interest in O'Brien, but simply a naked agency; and no pretense that respondent ever intimated to any one that the money was O'Brien's; respondent never represented it as such. He only told O'Brien to bet for him with his money, and O'Brien never gained credit, nor were the creditors of O'Brien deceived in any way.

It is true, as argued by counsel, that a party who permits another to deal with property as his own, to the injury of another, must lose his property. But the Court below negatives every pretense of injury to the attaching creditors by any permission of respondent.

In the case of Mitchell *v.* Reed, 9 Cal. 204, the rule was carried to its fullest extent, if the decision did not go *beyond* the law; but in

that case, Mitchell had repeatedly represented the property to be Haskell's, and had as often denied that the liquors seized were his own. His declarations were open, express and notorious. Here, the only words importing anything like admission of O'Brien's right was a confidential charge that the bet be made in O'Brien's name; but plaintiff never called it O'B.'s money; never declared that it was not his own but another's; nor did his confidential order to his agent go to the ears of the attaching creditors. They acted on appearances, not on admissions; nor were those appearances sufficient.

It is urged, last, that there is no privity between Hardy and Hunt, and therefore, that no suit can be maintained. This question is put at rest by the general rule of agency: that, though a contract be made by an agent in his own name, the principal may assume it and sue or be sued on it as if his name appeared; the only question being, Was it the principal's contract?

In Vischer v. Yates, 11 Johnson, p. 28, the very case at bar was decided by Chancellor Kent.

In that case the bet was made in the name of the agent, who also bet the money of other parties in the same bet, and all in his own name; and the Court allowed each principal to sue for his own money so wagered.

This doctrine was afterwards affirmed in the Court of Errors of New York, in Foote v. Yates, 12 Johnson, p. 10. See also, Duke of Norfolk v. Worthy, 1 Campbell, N. P. 337.

This Court adhered to the same rule in the case of the People v. Wright's Adm'r., (Houghtaling) 7 Cal. 348.

In Massachusetts, where an agent had bet off money as his own which had been entrusted to him as a carrier, the principal was permitted to and did sue and recover the same from the winner. Mason v. Waite, 17 Mass. R. 560.

BALDWIN, J., after stating the facts, delivered the opinion of the Court—FIELD, J., concurring.

There can be no doubt that the wager was illegal and void, as against public policy; the direct effect of such wagers being to affect the purity of elections. This has been often—indeed, we believe, uni-

versally—held, whenever the question has arisen. If this suit had been to recover a wager of this sort, the action could not be maintained. But this is not the question: The party depositing the money for this illegal purpose, may retract the illegal act. The money is not forfeited for the benefit of the stakeholder. (Vischer v. Yates, 11 John. 29.) He holds it as bailee of the depositor, who may resume it at any time before it is paid over to the winner. In this case, it seems, the wager was terminated before the election, by the proceedings taken at the instance of O'Brien's creditors.

It is not necessary to consider the illegal nature of these proceedings further, so far as Hardy is concerned; for the case stands as to him as if this money was placed by him in the hands of O'Brien for a lawful purpose. It would then be the ordinary case of one man putting in the hands of another a sum of money to be used *for a particular purpose*, by the bailee, in his own name; or, as was said by the Chief Justice from the Bench, like the case of an attorney depositing his client's money in bank in his own name, at the request, express or implied, of the principal. In such case, as to third persons, there is no reason for saying that the money is liable for the debts of the attorney. The doctrine of estoppel *in pais* has no application. If A consents, for one particular purpose, that B may use his property as his, A's own, as to that purpose, those dealing with B on the faith that the property *is* B's, may hold A to this representation; or, if A represents to C that particular property is D's, C may hold this as an estoppel if he deals with D on the faith of this declaration. But this does not authorize others, to whom the representation is not made, especially those who know the true state of facts, to deal with the property or attach or levy on it as the custodian's own. The doctrine of estoppel *in pais* is thus stated by Greenleaf on Evidence, vol. 1st, sec. 204:

" With regard, then, to the conclusiveness of admissions, it is first to be considered that the genius and policy of the law favor the investigation of truth by all expedient and convenient methods; and that the doctrine of estoppels, by which further investigation is precluded, being an exception to the general rule founded on convenience and for the prevention of fraud, is not to be extended beyond the reasons on

which it was founded.  It is also to be observed that estoppels bind only parties and privies—not strangers."   (See note 2 for illustrations, Coke Lit., 302–a.)

Again, in sec. 207, the author says :

" Admissions which have been acted on by others are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced.  It is of no importance whether they were made in express language to the person himself or implied from the open and general conduct of the party.  For in the latter case the implied declaration may be considered as addressed to every one, in particular, who may have occasion to act upon it.  In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations."

These citations show clearly that there is no such doctrine in the law of evidence as that a casual or other declaration or act, made or done by a party, which another may happen to hear of, which would authorize the latter, without seeking further information, to go on and act as if it were true, and hold the author concluded by it.  If this were so, the number of parol estoppels might be so enlarged as to make almost every act or admission an estoppel.  It would be scarcely safe to say or do anything in reference to his rights or property, lest he might be held to some estoppel in favor of parties who had no relations with him at the time of these acts or declarations.   (See also, Black v. Zachariah, 3 How. U. S. 511 ; U. S. v. Vaughn, 3 Binney, 511.)

There is no difficulty in distinguishing this money.  The plaintiff did not part with the ownership by allowing it to be used for his benefit, though in the name of another.  It was to be used for this one purpose—not invested, or changed, or further dealt with.  The money in the hands of the agent remained, as between him and the principal, the money of the principal.  Upon the retraction of the wager, if not before, the right to its possession was in the plaintiff.  This identical money was, it seems, deposited with the stakeholder.  We cannot see why the plaintiff did not have a right of action for it—especially as O'Brien interposes no objections.  And so are the authorities (11

John. 28; 12 John. 10; 1 Campbell, 337; 17 Mass. 560; 7 Cal. 348).

The judgment of the Justice was no protection to Hunt. Hardy was not a party to the judgment. On the contrary, the Justice refused to permit him to contest. Hunt, knowing the facts—if he is to be considered as a garnishee—should have set them up in some way, in resistance to the proceeding; if necessary, perhaps he might have filed an interpleader for his protection; or at least, appealed from this irregular and unauthorized judgment. In Oldham *v.* Ledhelter (1 How. Miss. R. 47) the Court of Errors and Appeals of Mississippi says: "The garnishee is regarded by the law somewhat in the light of a trustee, and is bound to protect, by legal and appropriate steps, the rights of all parties to the goods or credits attached in his hands; and if, after notice, though execution may have been awarded against him, he shall satisfy the judgment, it will be in his own wrong, and constitutes no valid defense to the claim of the assignee. This position is fully sustained by an authority in 1 Washington C. C. R. 425; and in 4 Greenleaf, 435, it was held, etc. The decision in the case of Prescott *v.* Hall (17 Johnson, 290) is in accordance with these authorities." In this case it was held the garnishee should have protected himself by a bill of interpleader; and failing to make the defense, he was held liable. Yarborough *v.* Thompson (3 S. and M. 291) affirms the same general doctrine.

If it be contended that the title to this money passed by a levy of the attachment, the answer is, that if this could be under any circumstances, it did not in this instance, because the money was not the property of O'Brien.

On the whole case, we think the judgment should be affirmed.