# WILLIAM E. JOHNSTON v. P. H. RUSSELL.

WAGERS.—At common law, wagers made in respect to matters not affecting the feelings, interest, or character of third persons, or the public peace or good morals, or public policy, are legal contracts, which may be enforced by action.

WAGERS UPON ELECTIONS.—Wagers upon the result of elections are against public policy, and are therefore void; and hence money put up in the hands of a stakeholder may be recovered if the wager be repudiated and a return of the money be demanded at any time before the election has taken place, and the result has become generally known, but not thereafter.

IDEM.—J. made a wager with F. that Seymour would receive a majority of the votes cast in this State at the presidential election in 1868, and F. made a wager with J. that Grant would receive a majority of said votes. The money was put in the hands of R. as stakeholder. After the election had taken place and the result had become known, J., having lost his wager, notified R. that he repudiated the wager, and demanded his money, but R. notwithstanding paid the money to F., according to the terms of the wager. In an action by J. against R. to recover his stake, it was held that a recovery could not be had.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*L. S. Taylor*, and *R. C. Clark*, for Appellant, cited *Wade v. Martin*, 37 Cal.

*Coffroth & Spaulding*, for Respondent, cited *Yates v. Foote*, 12 Johns. 1; *Morgan v. Groff*, 4 Barb. 524; *Like v. Thompson*, 9 Barb. 315; *Hickerson v. Benson*, 8 Mo. 8, 12; *Davis v. Holbrook*, 1 Lou. Ann. Rep. 176.

By the Court, SANDERSON, J.:

This is an action upon a promissory note. The defendant pleads payment. Below, judgment passed for defendant upon the following facts, which were found by the Court:

First—On the 8th day of September, 1868, plaintiff loaned the defendant eight hundred and fifty dollars, for which defendant gave the promissory note in suit, payable one day after date.

Second—On the 28th of September, 1868, plaintiff made a wager with one Freeman that Horatio Seymour would receive a majority of the votes to be cast at the ensuing presidential election in the State of California for President of the United States; said Freeman at the same time wagering with plaintiff that General Grant would receive a majority of such votes at said election for said office. That the defendant was chosen by the parties to said bet to act as stakeholder for them, and Freeman thereupon deposited five hundred dollars with defendant, and plaintiff directed defendant to put up his stake out of the money due upon said note, which was done as requested.

On the same day the plaintiff made another bet of two hundred dollars with one Miller, upon the terms and to the same effect as the bet above mentioned, the defendant acting as stakeholder, and plaintiff directing defendant to furnish one hundred dollars of his stake out of the money due him on said note; the other half of plaintiff's stake being furnished by the plaintiff from other sources, and the defendant put up said one hundred dollars, as requested by plaintiff.

On the same day plaintiff made another bet with one Howard upon the result of the presidential election in certain named States, in which plaintiff wagered his horse Consternation against Howard's horse Young Jack. It was agreed that each party to the bet might retain possession of his horse until after election, and that each should deposit in the hands of the defendant, as stakeholder, the sum of two hundred and fifty dollars, to abide the result of the election, in lieu of the horse, in case of non-delivery.

The defendant Russell, as in the aforementioned bets, acted as stakeholder in this, and at request of plaintiff put up his stake, to wit: two hundred and fifty dollars, out of the money due on said promissory note. That about three or four days after the bet was made, and before the election took place, plaintiff called at the store of the defendant, and said: "I am told that Howard has sold his horse, and I think that lets me out of the bet with him."

Third—All the elections upon which said bets depended took place on the 3d day of November, 1868, and on the 23d day of November, 1868, after the results—all of which were adverse to plaintiff—were known, plaintiff notified defendant as follows:

        "SACRAMENTO CITY, November 23d, 1868.

"Mr. P. H. Russell: I notify you that if you pay any of the money held by you as stakeholder in the bets made by me with Freeman, Miller, and Howard, you will do so at your own peril, as I repudiate said bets, and refuse to pay any of them.        W. F. JOHNSTON."

Defendant paid all of these stakes to the winners after the notice above mentioned.

The only question presented for our consideration is, whether these facts constitute a defense to the action. There is no statute in this State upon the subject of wagers, except the statute against gaming, which does not include wagers of this character, and hence the question, whether these facts are a defense, must be decided by a reference to the principles of the common law.

At common law wagers made in respect to matters not affecting the feelings, interest, or character of third persons, or the public peace, or good morals, or public policy, are valid and can be enforced. But if the wager involves a breach of the peace, or tends to a breach of the peace, or is calculated to wound the feelings, or affect the interests or character of third persons, or is in relation to a matter which is *contra bonos mores*, or is against public policy, it is illegal and void, and no action in *affirmance* of the contract can be maintained. Wagers upon the result of public elections are, under this rule, illegal and void, upon grounds of public policy. (*Bunn* v. *Riker*, 4 Johns. 426; *Lansing* v. *Lansing*, 8 Johns. 454.) Said Mr. Chancellor Kent, in *Vischer* v. *Yates*, 11 Johns. 28: "When we consider the importance of popular elections to the Constitution and liberties of this country,

and that the value of the right depends upon the independence, moderation, discretion, and purity with which it is exercised, we cannot but be disposed to cherish a decision which declares *gambling upon such elections to be illegal,* as being founded in the clearest and most incontestable principles of public policy."

The earlier decisions in England upon illegal contracts were contradictory, and the law, as remarked by the Chief Justice, in *Smith* v. *Bickmore,* 4 Taunton, 474, was for a time in "sad confusion." But it has now become well settled there that no action in *affirmance* of an illegal wager can be maintained, but actions which proceed upon a *disaffirmance* of the contract as illegal and void may be maintained, while the contract remains executory. Neither money won and not paid, nor money lost and actually paid to the winner can be recovered. In such an action the plaintiff is confronted and defeated by the maxim *in pari delicto, potior est conditio possidentis;* but, as was said by Lord Ellenborough, in *Edgar* v. *Fowler,* 3 East, 225: "In illegal transactions the money may always be stopped while it is *in transitu* to the person who is entitled to receive it." Hence, in England, either party may disaffirm the wager, and recover the money staked by him, even when it is in the possession of the opposite party, at any time before the event upon which the wager was made has transpired; and against a stakeholder, if there be one, at any time before the money has been actually paid to the winner, either before or after the event has transpired, and even after the money has been paid to the winner, if before the payment the stakeholder was notified not to pay it, for the reason that the contract is not executed, as the Courts hold, until the stakeholder has paid the stakes to the winner. (*Cotton* v. *Thurland,* 5 Term R. 405; *Howson* v. *Hancock,* 8 Term R. 575; *Smith* v. *Bickmore,* 4 Taunton, 474; *Haslelow* v. *Jackson,* 8 Barn. & Cress. 221.)

In *Vischer* v. *Yates, supra,* Mr. Chancellor Kent declared the English rule to be the true rule upon the subject. That was

an action by the loser of a bet upon the result of an election for Governor of New York against the stakeholder to recover his stake, and the action was brought after the result of the election was known, but before the money had been paid to the winner. The plaintiff recovered, and the judgment was affirmed in the Supreme Court. But the Court of Errors reversed the judgment in *Yates* v. *Foot*, 12 Johns. 1, and declared the law to be, that either party might disaffirm the wager and recover his stake of the stakeholder at any time before the happening of the event upon which the wager was made, but that the loser could not recover of the stakeholder after the event had happened and he had lost his money— that in that case as to him the wager had become an executed contract, and his repentance had come too late. This decision has remained the settled law of New York upon this subject, except so far as the matter has been modified by statute. (*Morgan* v. *Groff*, 4 Barb. 524; *Like* v. *Thompson*, 9 Barb. 315.) The reasoning of Senator Sanford in *Yates* v. *Foot*, against the English rule, so far as it allows a recovery against the stakeholder by the loser, after the event upon which the bet was made has transpired, is most pertinent and forcible. He said: "In contracts of hazard, the condition of the parties, after the uncertain event has happened, is extremely different from their situation before. Before the event has happened, and while it is uncertain who will be the winner, or the loser, neither is much injured, and perhaps not at all, by declaring the contract void. The parties are treated alike; neither of them can complain; and if it be necessary for the public good that the contract should not proceed further, the decision is made without any sacrifice of justice between the parties. Not so if the hazard has ceased, and the wager has been lost or won, according to the contract. A very different relation between the parties then takes place. If the losing party may vacate his contract, after the event has happened and is known, he is allowed to practice fraud upon the adverse party. To allow the loser to retract his contract, because he is the loser,

would give sanction to the grossest perfidy and injustice. If this party wins, he profits by the contract and takes the fruit of it; if he loses, he abjures the contract and exonerates himself from its obligation; if he wins, he holds the wager by the laws of honor; if he loses, he refuses payment, or reclaims the wager, if paid, by the laws of the land. According to the result, he avails himself either of the laws of honor or of the laws of the land. While the event is uncertain and unknown he stands upon the laws of honor. When it has happened, and is against him, he retires to the laws of the land. While he contracts upon the basis of hazard he incurs no risk. While he is himself wrapped in impenetrable armor he contends with a naked adversary. When he talks of contingency and hazard, he means certainty. When he promises, he deceives; and while he pledges his faith, he betrays. It is only the loser who repents. However bitter and sincere his repentance may be, it is not that he has offended against public policy, but that he has lost his money. To prove the sincerity of his repentance, and as an atonement for his sin against public policy, he proposes to cheat his adversary, and take back his own money after it has been lost."

This rule of the Court of Errors of New York has been adopted in some of the other States, while in still other States the English rule, as expounded by Mr. Chancellor Kent in *Vischer* v. *Yates*, has prevailed. There has been no decision in this State, so far as we are advised, declaring definitely for or against either rule. The only cases upon the general subject have been *Bryant* v. *Mead*, 1 Cal. 441; *Gahan* v. *Neville*, 2 Cal. 81; and *Hardy* v. *Hunt*, 11 Cal. 343, in neither of which did the question arise. Not being concluded by any previous decision, we are at liberty to adopt the rule, which, in our judgment, best promotes good morals, and subserves the public policy, upon which all rules upon this subject are supposed to be founded.

We see no satisfactory reason for the distinction made by the English cases between actions directly between the par-

ties to the wager and actions between the loser and the stakeholder, if one has been employed. For the reasons so cogently put forward by Senator Sanford, in *Yates* v. *Foot*, we think the New York rule is founded upon the better morality. If the parties to an illegal wager repent and desire to withdraw before the wager has been decided, let them be encouraged to do so by allowing them to recover their stakes from each other, or from the stakeholder, if one has been employed. In times of political excitement persons may be provoked to make wagers which they may regret in their cooler moments. No obstacle should be thrown in the way of their repentance, and if they retract before the bet has been decided, their money ought to be returned to them. But persons who allow their stakes to remain until after the bet has been decided, and the result has become generally known, are entitled to no such consideration. Their tears, if any, are not repentant tears, but such as crocodiles shed over the victims they are about to devour. To allow them to recover is not to reward repentance—not to promote the public good; for as to that, the mischief has already been done, but to reward hypocrisy and promote the private interests of such as are found willing to violate not only the law of the land, but the law of honor also. After the money has been lost and won, and the result generally known, neither party ought to be heard in a Court of justice.

The judgment is affirmed.