ALBANY,
Jan 1814.

VISCHER
v.
YATES.

VISCHER *against* YATES.

THIS was an action of *assumpsit* for money had and received to the use of the plaintiff. Plea, *non assumpsit.* The cause was tried at the *Albany* circuit, in *October,* 1813, before Mr. Justice *Thompson.*

The plaintiff, in *April,* 1813, deposited with *Joseph Alexander,* as his agent, 500 dollars, to bet on the approaching election of the governor of this state. Before the election took place, to wit, on the 17th of *April, Alexander* and *Philip S. Parker* made a *bet* of 2,500 dollars, and deposited the money with the defendant, who delivered to each of them a certificate in writing, as follows: " This may certify that *Philip S. Parker* has deposited with me 2,500 dollars, and *Joseph Alexander* has deposited with me the like sum; and in case *Stephen Van Rensselaer* is elected Governor of the state of *New-York,* at the ensuing election, then I am to pay the above two sums to *Joseph Alexander ;* and in case *Daniel D. Tompkins* is elected governor as aforesaid, then I am to pay the said sums to *Philip S. Parker :* such payments to be made immediately after the votes are canvassed. *April* 17, 1813. *John W. Yates.*" The 500 dollars left with *Alexander,* by the plaintiff, was part of the sum so deposited; the residue belonged to four other persons; and *Alexander* informed the defendant and *Parker,* at the time, that the money so deposited by him was not his own, but that he made the bet as agent for others, whose names, however, he did not then mention. On the 31st of *May,* 1813, *Alexander* gave a written notice to the defendant, mentioning the names of the persons to whom the money deposited by him belonged, and specifying the particular sums belonging to each respectively. After this notice, the plaintiff demanded the 500 dollars belonging to him, from the defendant, who admitted he had the money in his possession, but refused to deliver it to the plaintiff. The plaintiff and defendant, *Alexander* and *Parker,* were all legal

A wager between two qualified electors, on the event of an election, is illegal. And where A. delivered money to B., as his agent, to bet with on the event of the approaching election of *governor,* and B. made a bet with C., and they deposited the sums bet with in the hands of D., it was held that A., the principal, might maintain an action against D., the stakeholder, to recover back the money deposited by B.; the money not having been paid over by D., though the event of the election was known, and the wager lost by B. The maxim that *in pari delicto potior est conditio possidentis,* does not apply in a suit against a stakeholder, but only where it is founded on the disaffirmance of the contract, and on the ground of its being void, and that the money ought not to pass to the winner. Where the event has happened, the maxim applies, and the loser cannot recover back his money from the winner; but before the event happens, either party may recall his money from the hands of the other: and if the money is still in the hands of a stakeholder, whether the event has happened or not, either party may reclaim his money, at any time, while it is *in transitu.*

voters for governor, and were so at the time of the election. All the votes for the governor were returned to the office of the secretary of state, and the returns had been published in all the gazettes, before the 31st of *May*, and the plaintiff knew of the returns before that time; and it was admitted that by the returns of votes so published, *Daniel D. Tompkins* had a majority of votes. The returns of votes were afterwards, on the 1st of *June*, 1813, *canvassed*, according to the directions of the act, and the canvassers certified that *Daniel D. Tompkins* was duly elected governor of the state.

The jury found a verdict for the plaintiff for 500 dollars, with interest, subject to the opinion of the court, on a case containing the facts above stated; and it was agreed that either party might turn the case into a special verdict, for the purpose of bringing a writ of error.

*Foot*, for the plaintiff. The money in the hands of the defendant was not so tied or bound in law, as to prevent the plaintiff from claiming it. Where money is deposited in the hands of a stakeholder, on an unlawful contract, it may be recovered back. The wager in this case was unlawful. It was decided in *Bunn* v. *Riker*,[*] that wagers against the principles of sound policy were void. That was also a wager on the election of Governor *Tompkins*. The same doctrine was laid down in *Lansing* v. *Lansing*,[†] on the authority of the decision in *Bunn* v. *Riker*. In *Cotton* v. *Thurland*,[‡] and *Lacaussade* v. *White*,[§] it was decided by the court of K. B., in *England*, that money deposited on an illegal wager, or contract, might be recovered back, even after the event had happened. In the case of *Townson* v. *Wilson*[||] Lord *Ellenborough* laid it down, that if a person gets money into his hands illegally, he cannot discharge himself by paying it over to another; but is liable to refund it in an action for money had and received.

*Woodworth* and *T. A. Emmet*, contra, contended, 1. That *Alexander* only, not the plaintiff, could have a right to bring the action. The stakeholder knows only the person who makes the deposite. The defendant gave a receipt to *Alexander*, who might have brought an action for the money. If the plaintiff

[*] 4 *Johns. Rep.* 426.

[†] 8 *Johns. Rep.* 454.
[‡] 5 *Term Rep.* 405.
[§] 7 *Term Rep.* 535.

[||] 1 *Campb. N. P.* 396.

ALBANY,
Jan. 1814.

VISCHER
v.
YATES.

has a right of action, it must be on the ground of *notice* to the defendant. But the effect of notice is not to create a legal right; it furnishes only an excuse to the defendant for paying over the money to the principal. The cases as to principal and agent arise out of the law merchant, and are peculiar to commercial transactions. They do not apply to other affairs. The right of action accrued, if at all, the moment the money was deposited. But to whom? The person who made the bet and deposited the money; not to the plaintiff. The defendant may not have been willing to have been a stakeholder to the plaintiff, though he was to *Alexander*. Had the names of the other persons been disclosed, he might have had good reasons for refusing to be a stakeholder for them. It would be a fraud on the defendant to allow the plaintiff, and the others who claim to be interested, now to bring their actions against him. Again, five persons were jointly interested in the sum deposited; and will the court tolerate that so many separate suits should be brought against the defendant?

2. But the principal question is, whether after a bet has been fairly made, and the event has happened by which the money was to be lost or won, the court will permit it to be recovered back from the stakeholder. It is supposed that a distinction has been taken in the *English* courts, which authorizes a suit to recover back the money deposited with a *stakeholder*, if it is not paid over, though the event has happened on which the wager was to depend. This distinction is first met with in the case of *Cotton* v. *Thurland*.* In that case it was a matter of dispute whether the event had happened, or the bet was lost or won. Here no demand was made of the defendant until the event had happened, and the risk run, and the plaintiff knew that it was against him. The counsel there argued it on the supposition that it was not yet decided who was the *winner*, and contended for the plaintiff's right of action, on the ground that the contract was *executory*, which distinguished it from the case of *Cann* v. *Alder*, before *Wilson*, J. on which *Grose*, J. relied at the trial, when he nonsuited the plaintiff. Lord *Kenyon*, in this case, for the first time, takes the distinction that the action was brought, not against one of the parties laying the wager, but the *stakeholder*. *Ashhurst*, J. who also concurred in the opinion that the plaintiff was entitled to recover, says there was neither equity nor conscience on the part of the defendant; for if the contract were illegal between the

* 5 *Term Rep.* 405.

ALBANY,
Jan. 1814.

VISCHER
v.
YATES.

parties, yet, as long as the money remained in his hands, he was answerable to some one for it. *Buller*, J. is stated to have been of the same opinion, and *Grose*, J. said, at the trial, he agreed to the case decided by *Wilson*, J. but as the cases from Lord *Raymond* and *Buller's N. P.* were the other way, he thought the nonsuit ought to be set aside; and his opinion seems to accord with the reasons of neither of the other judges, and is, at best, founded in error. As, then, none of the other judges, in this case, take notice of the distinction taken by Lord *Kenyon*, it must be regarded merely as a *dictum* of his lordship, and in a case where the contract was *executory*, or the event had not happened. Besides, the position of *Ashhurst*, J. that the stakeholder must be answerable to somebody, is not universally true; for in *Norman* v. *Cole*,[*] Lord *Eldon* held that the action was not maintainable, though the money was in the hands of the stakeholder. The case, then, of *Cotton* v. *Thurland* will not support the plaintiff's action.

[*] 3 *Esp. Cas.* 253.

Next, as to the case of *Lacaussade* v. *White*.[†] That was a wager that peace would take place between *Great Britain* and *France*, before the 11th *September*, 1797. As it is a notorious fact that no such peace did take place, the wager was won, and it must have been an action by the *winner* against the *loser*. The marginal abstract of the point decided, is palpably wrong. The counsel do not argue the case, either on the facts as stated, or on the principle said to be decided by it. It is, in truth, a case so misreported as to be entitled to no weight as an authority. Indeed, the case was afterwards discussed and examined in the case of *Howson* v. *Hancock*,[‡] and considered as overruled.

[†] 7 *Term Rep.* 535.

The confusion and uncertainty which has prevailed on this subject, has arisen from the want of a clear and fixed principle of decision. Lord *Mansfield*, in *Smith* v. *Bromley*,[§] lays down the rule that where both parties are equally criminal, the party paying shall not have his action to recover back his money, according to the established legal maxim, that where both are *in pari delicto, potior est conditio defendentis;* and the only distinction is between the case where both parties are equally affected by the illegality, and that in which the party receiving the money only is affected by it. The legal maxim applies to the present case; for though the defendant, *Yates*, being a mere stakeholder, cannot be said to be *in pari delicto* with the plaintiff,

[‡] 8 *Term Rep.* 575. See also 1 *East*, 98. 8 *East*, 381. n. (a).

[§] *Doug.* 696.

yet the real parties in interest are so, and it is to them the court will look. For, as Lord *Ellenborough* said in *Edgar* v. *Fowler*,* the court will not assist an illegal transaction, in any respect, but leave the matter as they found it; and then the maxim applied of *potior est conditio possidentis.*

ALBANY,
Jan. 1814.

VISCHER
v.
YATES.

* 3 *East,* 223.

In *Bunn* v. *Riker*,† in which the wager was decided to be illegal, this court would not allow the plaintiff to recover any thing, not even his own money.

† 4 *Johns. Rep.* 426.

Again, what is the principle of the action for money had and received? It is that the demand of the plaintiff is equitable and conscientious, not merely that it arises out of an illegal transaction. It is unfair and unconscientious to wait until the event happens, and take the chance of winning, and then, when the event is known, bring his action to recover back his money. There is, therefore, no distinction between an action against a stakeholder or the principal, after the event has happened. The claim is equally unconscientious in either case. The equitable and conscientious nature of the plaintiff's claim is the essence of the action, and the illegality of the transaction gives him a right to recover no farther than his demand is conscientious.

The *impolicy* of wagers of this kind is not the only evil to be guarded against; there is another and greater evil, as it respects morality and good faith, which is to allow a party, after the event has happened, to recover back his money, against probity and conscience.

A stakeholder is the agent of both parties. Each authorizes him to use the same defence the principal would have if the suit was against him. This court is not shackled by any *English* authority antecedent to our revolution; but is at liberty to decide this case on principle.

*Foot,* in reply, said, as to the mode of bringing the action, it is sufficient to cite the case of the *Duke of Norfolk* v. *Worthy*,‡ in which Lord *Ellenborough* decided, that an action for money had and received might be brought by the principal to recover back money deposited by his agent in the hands of a third person.

‡ 1 *Campb. N. P.* 337.

Again, parties are not bound to join in an action, unless they have a joint interest in the same thing. Here each of the persons, who have brought suits against the defendant, claims his own separate and distinct sum of money.

All the cases, old and new, agree in saying, that where the

money is not paid over, or where the contract is executory, the plaintiff may bring an action to recover back the money.

KENT, Ch. J. delivered the opinion of the court. Two ques-tions have been made upon this case.

1. Whether the action (if any) ought not to have been brought by *Alexander*, who actually deposited the money?

2. Whether an action will lie, at all, to recover back the de-posit money?

1. The case of the *Duke of Norfolk* v. *Worthy*, (1 *Campb. N. P.* 337.) is in point, to prove that the suit is well brought in the name of the plaintiff; for the 500 dollars deposited was the plain-tiff's money, paid through the medium of his agent, and if the money ought to be refunded to any person, it ought to be to the plaintiff. The decision of Lord *Ellenborough*, in the above case, was afterwards sanctioned by the K. B., and the principle contained in it appears to be solid.

2. The wager in this case was illegal. This was so decided in *Bunn* v. *Riker*, (4 *Johns. Rep.* 426.) and that decision was afterwards repeated in *Lansing* v. *Lansing*. (8 *Johns. Rep.* 454.) And when we consider the importance of popular elections to the constitution and liberties of this country, and that the value of the right depends upon the independence, moderation, discre-tion, and purity with which it is exercised; we cannot but be disposed to cherish a decision which declares *gambling upon such elections to be illegal*, as being founded in the clearest and most incontestable principles of public policy. Here was, then, an illegal contract, and the plaintiff, by his agent, de-posited 500 dollars with the defendant, as a stakeholder, to be hazarded at the governor's election. If, after the determination of the event against the plaintiff, the money had actually been paid over to the winner with the plaintiff's consent, or perhaps without notice to the defendant to the contrary, the plaintiff could not have sustained an action against the winner to recover back the deposit. This was so decided in *Howson* v. *Hancock*, (8 *Term Rep.* 575.) and Lord *Kenyon* said, in that case, that there was no instance of such an action being maintained. The case, then, of *Lacaussade* v. *White*, in 7 *Term Rep.* 525. (and which appears to be very imperfectly reported,) was either an action against the stakeholder, before the money was paid over, as Lord *Kenyon* understood it, or it was corrected and overruled by the

case of *Howson* v. *Hancock.* There is also a decision in this court, in exact conformity with the latter case. (*M'Cullum* v. *Gourley,* 8 *Johns. Rep.* 147.) But the present action is not against the winner, after the money has been paid, but it is against the stakeholder before the money has been paid, and after notice to the stakeholder not to pay it over, and it falls within the case of *Cotton* v. *Thurland.* (5 *Term Rep.* 405.) That was the case of a wager deposited with a stakeholder, upon the event of a battle to be fought between the plaintiff and a third person. The battle was fought, and notice was then given to the defendant not to pay over the money; and it was held by the court of K. B. that the action lay against the stakeholder to recover back the deposit, as the money was still in his hands, and he was answerable to some person for the money, and had no conscience on his part to retain it. This case has never been contradicted or questioned; and it is precisely in point. There is not a decision to be met with in the *English* law that is against it. The cases are generally between the principals to the illegal contract; and the courts take a distinction between contracts that are immoral or criminal, and such as are simply illegal and void. Assistance is usually given to the party, in the latter cases, to recover back his money; and this court lent such assistance in the case of *Mount & Wardell* v. *Waites.* (7 *Johns. Rep.* 434.) The stakeholder ought not to be permitted to hold the money in defiance of both parties. There would be no equity in such a defence, and if the plaintiff cannot recover back the deposit in this case, the winner cannot recover it; for that would be compelling the execution of an illegal contract as if it were legal, and would at once prostrate the law that declares such contracts illegal. The case of *Edgar* v. *Fowler* (3 *East,* 222.) is to this effect. In that case the premium, for an illegal insurance, was considered by the assured, and by the broker, *as paid* to the broker for the insurer, and the policies were signed. The assured afterwards gave notice to the broker " to hold the stakes deposited by him, in his hands, for his use, and not to pay any money over;" and the insurer was not permitted to recover the premium, so admitted to be deposited, because it would be enforcing an illegal contract.

Much is said, in some of the cases, upon the distinction between executed and executory contracts, and that where the plaintiff waits, without taking any step to rescind the contract,

until the risk has been run, the courts will not help him to recover back the deposit money, but will remain neutral between the parties. The claim of the plaintiff is repelled by the maxim, that *in pari delicto potior est conditio possidentis*. But this objection is applied exclusively to the suit against the principal, or winner; and there is no instance in which it has been used as a protection to the intermediate stakeholder, who, though an agent in the transaction, is no party in interest to the illegal contract. As between the plaintiff and him the maxim has no application. He is not *in pari delicto*, and the parties must be *equally* criminal, before the maxim can be applied. The stakeholder cannot in good conscience appropriate the money to his own use; and as it was received without a valid consideration, and for an illegal purpose, the plaintiff, as against him, has the preferable title. The action is founded on the *disaffirmance* of the unlawful contract, and on the ground that it is void, and that the money ought not to pass to the winner. After the event, it is then, indeed, too late for the loser to reclaim the money from the winner, for then the maxim applies; but before the event has happened, either party may repent, and recall the deposit money, even out of the hands of his opponent. And if the money is still with the stakeholder, the happening of the event is immaterial, and either party may, at any time, arrest it. These are the true distinctions, and which go to reconcile all the cases. "In illegal transactions the money," as Lord *Ellenborough* said in *Edgar* v. *Fowler*, "may always be stopped while it is *in transitu* to the person who is entitled to receive it."

There is not a case, or a *dictum*, as I apprehend, that does not allow the merits of the contract to be discussed, so long as the defendant stands in the character of a stakeholder. There are cases in which the payment of money to an agent, on the consummation of an illegal contract, to and for the use of the opposite party, has been held recoverable without looking back to the original contract; but in those cases the money was not deposited with the agent, *qua* stakeholder, to abide the event. (*Tenant* v. *Elliott*, 1 *Bos. & Pull.* 3. and *Farmer* v. *Russell, ibid.* 296.) It was paid absolutely for the principal's use. But where it is a mere *deposit* on the contingency of the *bet*, the winner cannot claim it by suit, as that would be an *affirmance* of the illegal contract, and asking the aid of the court to enforce it. In *Edgar* v. *Fowler* some losses had actually happened upon the

illegal policies, before the assured gave notice to the broker not to pay over the premium, and yet the assignees of the underwriter were not allowed to recover that premium out of the hands of the broker, *though the risk in that case had actually been run.*

The *English* rule is the true rule on this subject. On the disaffirmance of the illegal and void contract, and before it has been carried into effect, and while the money remains in the hands of the stakeholder, each party ought to be allowed to withdraw his own deposit. The court will then be dealing equitably with the case. It will be answering the policy of the law, and putting a stop to the contract before it is perfected. By denying the plaintiff his right of recovery, we should condemn what is now the acknowledged *English* law, and we should infringe the spirit of many decisions, (and one of them in this court,) which have allowed premiums to be recovered back, when actually paid over, where there is no intrinsic criminality in the contract. We should also find that the practice of betting at elections would be continued, with all the heat and corruption which it engenders; for if the plaintiff cannot, by law, recall his deposit from the stakeholder, it will most certainly pass into the hands of the winner. The courts have gone quite far enough, when they refuse to help either party, *as against the other*, in respect to these illegal contracts. This was a step beyond the policy of the lawgiver. The act of 1801, against *gaming*, (sess. 24. c. 46. 1 *N. R. L.* 152.) allowed the loser to recover back of the winner his lost money, and the subsequent act of 1802, against *horseracing*, (sess. 25. c. 44. 1 *N. R. L.* 222.) contained the same provision. Nor are our statute laws peculiar on this subject. The statute of *Anne*, from which the act of 1802 was borrowed, contains the same regulation; and so did one of the edicts in the *code* of the *civil law*. (*Code*, 3. 43. 1. and 2.) The *French* ordinance of *Lewis* XIII. went still further, and gave to the loser an action to recover back his money, even against the owner of the house in which he was permitted to gamble. We may be assured that the present action (and which indeed falls far short of these statute provisions) is perfectly consistent with the policy and the wisdom of the soundest institutions among mankind. And if gambling on elections does really lead to corruption, passion, and violence, we ought anxiously to adopt every just principle calculated to put an end to the mischievous

practice. No rule which falls within the cognizance of the courts appears to me to be more fit and effectual than that which suffers the deposit money to be arrested while it is *in transitu*.

We have hitherto proceeded upon the assumption of the fact that the event had happened, within the contemplation of the contract, when notice was given to the defendant not to pay over the money. But this was conceding more than the case required. The money was not to be paid over until the votes for governor were " canvassed." The statute renders the decision of the *canvassers* final and conclusive; and it by no means necessarily followed, that the majority of votes returned into the secretary's office would determine the event; for some of the votes might have been illegally returned. Frequent instances have occurred in which the candidate for an elective office, with a minority of the votes returned, has been declared duly elected. In this case, the parties referred to the decision of the canvassers, as the true and only certain *test* of the determination of the bet, and that test had not been given when the money was demanded of the defendant. The risk had not, at that time, been run and determined within the purview of the contract. This objection is, however, founded on a strict construction of the contract; and though it would be sufficient to avoid the application of much of what was urged on the part of the defendant; yet we choose rather to place the decision of this case upon those great and solid principles of public policy which forbids this species of gambling, as tending to debase the character, and impair the value of the right of suffrage.

The court are, accordingly, of opinion, that the plaintiff is entitled to judgment.

> Judgment for the plaintiff.

N. B. There were four other suits, by the other persons who had delivered different sums, at the same time, to *Alexander*, for the purpose of *betting* on the election of governor, and which, depending on the same facts and principles as the above case, were decided by the court on the same ground, and judgments were entered for the plaintiffs accordingly.