## Horn vs. Foster.

It is not actionable to charge a person with swearing falsely in testifying as a witness on the trial of a cause, if the testimony charged to be false was not material to the issue involved in the suit in which it was given.

In a suit before a justice of the peace on an account, the defendant filed a set-off charging the plaintiff with a wager won on an election; the defendant was sworn as a witness to testify as to the wager: *Held*, That a wager won upon an election could not be the subject of a set-off: that the testimony as to such wager was not material to the issue involved; and that to charge the defendant with having sworn falsely in reference to it, does not constitute slander in legal parlance.

*Error to Washington Circuit Court.*

Hon. Felix J. Batson, Circuit Judge.

Fowler & Stillwell, for the plaintiff.

Watkins & Gallagher, and Walker & Green, for defendant.

The testimony given by the plaintiff before the justice of the peace, and concerning which he was charged by defendant with having sworn a lie, was not material to the issue in the case, and therefore the witness could not have been guilty of perjury, and the present action cannot be sustained. *Coon vs. Robinson*, 3 *Barb. S. C. R.* 630; *Rouse vs. Ross*, 1 *Wendell* 475; *Crookshank vs. Gray & Wife*, 20 *J. R.* 348; *Chapman vs. Smith*, 13 *J. R.* 81; *Roberts vs. Champlin*, 14 *Wend.* 121; *Power vs. Price*, 12 *Wend.* 500; *Jacobs vs. Hill*, 572.

A bet on an election is illegal, etc., contrary to public policy, and the Court had no jurisdiction of the case, so far as the wager was attempted to be set-off. *Dig., secs.* 1, 4, *p.* 557; 9 *Cowen* 172; 4 *J. R.* 426; 15 *Conn.* 28; 6 *Wheat.* 176; 7 *Watts* 294; 10 *Ala. R.* 316; 9 *Barb. S. C. R.* 315; 12 *Iredell* 344.

An indictment for perjury could not have been sustained on account of said testimony; because it was not material, was extra judicial, the justice before whom it was given having no jurisdiction. 2 *Greenl. Ev.*, *p.* 184, 186; *Hench vs. State*, 2 *Miss.* 158; *State vs. Hathaway*, 2 *N. & McCord*, 118; 1 *Tenn. R.* 96; *State vs. Dodd*, 3 *Mass.* 226; 3 *Murph.* 226; 4 *Miss.* 47; 1 *Scam.* 80; 3 *Hawks*, 474; *Stat vs. Alexander*, 4 *Hawks* 182; *State vs. McClosky*, 4 *McCord* 3; *State vs. White*, 8 *Pick.* 243; *Com. vs. Knight*, 12 *Mass.* 274; *State vs. Hall*, 7 *Blackf.* 75; 6 *Barr* 173; 26 *Maine* 69.

Mr. Justice Hanly delivered the opinion of the Court.

Matthew Horn, the plaintiff in error, sued Josiah Foster, the defendant, in an action on the case for slander. The charge laid in the declaration is, in substance, that defendant accused the plaintiff with swearing falsely. The defendant pleaded the general issue, and the truth of the accusation in justification. The issues were formed on these pleas, and were tried by a jury, and the verdict was for the defendant.

The facts of the case are, that Foster sued Horn on an account, before a justice of the peace. Horn appeared on the day of trial, before the justice, and filed an account against Foster as a set-off. Among the items charged in Horn's set-off was one of $20, charged thus: "the amount won on the senatorial election, August, 1852." Horn, without having first called on Foster to testify in relation to his set-off, though at Foster's solicitation or suggestion, was sworn, and testified, in substance, that he and Foster had bet $20 on the result of the senatorial election pending between George W. Clark and Abraham G. Mayers, in the district composed of the counties of Crawford and Sebastian, in the summer of 1852, and that he, Horn, had won the bet. Foster said that he, Horn, had sworn to a d—d lie in this particular, and that he could prove it. This statement was made by Foster on various occasions after the trial before the justice; but in most of the instances, if not all, he stated that the false swearing was in reference to the

$20 bet said to be on the election, and all the witnesses understood the imputation of false swearing to relate to Horn's testimony before the justice as to the wager on the election.

After all the evidence had been submitted on both sides, of which the above is the substance, as far as it is material to state it for our present purposes, the plaintiff, by his counsel, moved the Court to instruct the jury as follows:

1. That if they believe from the evidence that the defendant spoke and published the words, charged in the declaration, of and concerning the plaintiff, and of and concerning a judicial proceeding before James Sangster, Esquire, in which the said plaintiff had testified as a witness, and in reference thereto, then they must find for the plaintiff.

2. That, if the jury believe from the evidence that the defendant spoke and published the words of, and concerning the plaintiff, as charged in the declaration, and intended thereby to impute the crime of perjury to the plaintiff, then they must find for the plaintiff, unless they believe from the evidence that the defendant has fully sustained his plea of justification.

3. That, if the jury believe from the evidence that the defendant spoke and published the words of, and concerning the plaintiff, as charged, that they must find for the plaintiff, unless it also appears from the evidence that the defendant, at the time of speaking and publishing the words, accompanied them by such qualifications and explanations as showed clearly that he did not intend to impute to the plaintiff the crime of perjury.

Which motion, the transcript states, the Court overruled and refused to give the instructions, or any, or either of them to the jury, for which the plaintiff excepted at the time.

The defendant, then, by his counsel, moved the Court to instruct the jury as follows:

1. That to charge one with false swearing in testifying as a witness on the trial of a cause, is not actionable, if the evidence, charged to be false, was not material to the issue involved in the suit in which it is given.

2. That in an action for the recovery of a wager on an election, or in any action where such wager is pleaded as a set-off, the testimony of a witness, whether he be a stranger to the suit, or one of the parties, to prove or disprove the betting, is immaterial, for the reason that such wager is a violation of the law, and whether it was, or was not made, could not be material on the trial, inasmuch as no judgment could be given upon it.

3. That if the jury find, from the evidence, that the charge of false swearing imputed by the defendant to the plaintiff, was uttered in reference to the testimony given by the plaintiff on the trial of a cause pending before a justice of the peace, wherein defendant was plaintiff, and plaintiff was defendant, was wholly in relation to the charge of $20, for a wager on an election, charged in plaintiff's set-off, they should find for the defendant.

These instructions were, severally, given to the jury by the Court, for which the plaintiff also excepted at the time.

After the verdict was rendered by the jury, the plaintiff, by attorney, moved the Court to set it aside and grant him a new trial on the following grounds:

1st. Because the finding of the jury is contrary to law;

2d. Because the finding of the jury is contrary to evidence;

3d. Because the verdict is not responsive to the issues;

4th. Because the Court erred in refusing to give the plaintiff's instructions;

5th. Because the Court erred in giving the defendant's instructions.

The motion for a new trial was overruled, for which the plaintiff also excepted, and filed his bill of exceptions, setting out all the evidence and the instructions refused, and those given.

The plaintiff brought error, and assigns for ground the decision of the Court below, in refusing to give the instructions proposed by him, and giving those at the instance of the defendant.

We take it that, if the instructions, which were given, were proper, those refused were improper under the pleading and evidence in the cause. We will consider the propriety of those given, and, in determining that, will adjudicate. and settle the only points which are really in the case.

1. Is it actionable to charge a party with false swearing in testifying as a witness on the trial of a cause, if the testimony charged to be false was not material to the issue involved in the suit in which it was given?

Perjury, by our law, is defined to be the wilful and corrupt swearing, testifying, or affirming falsely to any material matter in any cause, matter, or proceeding, before any court, tribunal, body corporate, or other officer, having, by law, authority to administer oaths. The wilful and corrupt swearing, affirming, or declaring falsely to any affidavit, deposition, or probate, authorized by law to be taken before any court, tribunal, body politic, or officer, shall also be deemed perjury. See *Digest; secs. 1 and 2, chapter 51.*

At the common law, perjury is defined to be " the taking of a wilful false oath by any one, who, being lawfully sworn by a competent court to depose the truth in any judicial proceeding, swears falsely, in a matter material to the point in question, whether he be believed or not." See *Whart. Amer. Cr. Law,* 650, 651.

By comparison it will be readily perceived that the only departure from the common law, made by our statutory definition of perjury, is in an enlargement of the offence, and making it extend to other false oaths than such as should be taken in the course of judicial proceedings. In other respects, the definition is left unchanged. As, for instance, if the charge of perjury, in any case, should be, falsely swearing before an officer—contra-distinguished from a Court—to constitute the offence of perjury it would be necessary, to make out the charge against such person, to establish by proof that the officer before whom the oath was taken had lawful authority to administer it; and that the matter sworn to before him, charged to be

false, was material to the enquiry, matter or thing, about which the oath was taken or administered. Without such proof, we apprehend, a conviction could not be had in any case, which would stand if properly tested.

*Section* 2. *chapter* 152, *title Slander*, is in these words:

" It shall be actionable to charge any person with swearing falsely, or with having sworn false, or to use, utter, or publish words of, to, or concerning any person, which, in their common acceptation, amount to such a charge, whether the words be spoken in a conversation of and concerning a judicial proceeding or not." See *Digest, p.* 491.

The scope and design of this provision evidently were to extend the remedy for slander to other charges of false swearing, not allowed or authorized by the common law. By the common law, an action for slander did not lie for words imputing false swearing outside of a court of justice. And this, because of that ancient rule, *i. e.* that "No charge upon the plaintiff, however foul, will be actionable without special damage, unless it be of an offence punishable in a temporal court of criminal jurisdiction." See 1 *Stark. on Slander*, 21.

To illustrate this rule: It has been held by a long series of cases, that to say a man is " forsworn," or that he has taken a false oath, generally, and without reference to some judicial proceeding, is not actionable: and the reason is said to be, that in the latter case, perjury is charged, for which, were the charge true, the party would be liable to be indicted and punished: in the other, no more than a breach of morality is imputed, of which the law does not take cognizance. See *Cro. Eliz.* 429; *Popham* 210; *Cro. Eliz.* 135, 609, 720, 788; 1 *Vin. Abr.* 404; 1 *Rol. Abr.* 40; *Com. Dig.* title *Action on the case for defamation*, D. 7; 6 *Mod.* 200; *Hopkins vs. Beedle*, 1 *Caines* 347, *and note; Stafford vs. Green*, 1 *John. Rep.* 505; *Ward vs. Clark.* 2 *Ib.* 10; *Watson vs. Hampton*, 2 *Bibb's Rep.* 319; *Jacobs vs. Tyler*, 3 *Hill Rep.* 572.

Our statute in reference to slander, being designed simply to extend the remedy for slander beyond that secured by the com-

mon law, has not in letter or spirit, changed or altered the rules of pleading or evidence, which obtain in reference to that action. *McGough vs. Rhodes*, 7 *Eng. Rep.* 625. To charge a party, under our law, with "swearing falsely," or with "having sworn false," in any case or instance where the oath charged to be false, was administered by an officer having authority to administer it, if pertinent or material to the matter or proceeding before him, would be to charge such party with the crime of perjury; and consequently, if untrue in point of fact, is rendered actionable under our slander statute.

An example will illustrate our meaning in this respect:

A justice of the peace, under our administration law, is authorized to administer the oath required to be appended to all claims exhibited against estates of deceased persons. See *Digest, chap.* 4, *sec.* 88. If such an oath thus taken should be false, the party taking it would be guilty of perjury. But suppose the justice, in addition to the oath prescribed by the statute, should think himself warranted to extend the affidavit, and require the party to swear that the debt sought to be authenticated, had been contracted at some particular place, and the party in pursuance of this requirement, should swear that it had been contracted in New Orleans, when, in point of fact, it had been contracted in Louisville—the place being immaterial—this would not be perjury in the party making the oath, for it would want the ingredient necessary, both at the common law and under our statute defining perjury—materiality—the matter or proceeding confided to the justice being to authorize him to authenticate the claim, in reference to its justice, and the amount really due after all proper credits had been allowed.

In the example, which we have just given for illustration; suppose it was true, that the debt had been contracted in New Orleans, and the administrator, or any other person, believing it not true, should say of the party making the affidavit, that he had sworn falsely in that particular, would that be slander either at the common law or under our statute?

Most clearly not: and for the reason that the oath, as to the place, was extra official on the part of the justice, it not being material to the matter or enquiry before him, as before shown. And such is the law in reference to oaths administered in courts of justice.

We have said, it was necessary, to have sustained this action on the part of the plaintiff, that the evidence given by him before the justice of the peace, and charged by the defendant to be false, should have been material to the issue on trial before the justice. By this we do not desire to be understood as saying in this particular case, that he should have shown its materiality further than was done. Proof that evidence was given before a justice in the trial of a cause pending before him, is sufficient to raise the presumption in favor of the plaintiff, that the justice had jurisdiction of the subject matter, had authority to administer the oath, and that the evidence was material to the issue on trial. But this presumption may be repelled by more potent proof on the part of the defendant. See 1 *Stark. on Slander* 88, *note aa*; also, *Coons vs. Robinson,* 3 *Barb. (Law.) Rep.* 655; *Jacobs vs. Tyler, ub. sup.*; *Price vs. Power,* 12 *Wend. Rep.* 502; *Power vs. Price,* 16 *Wend. Rep.* 450. *Butterffeld vs. Buffum,* 9 *N. Hamp. Rep.* 156; *Coleman vs. Godwin,* 3 *Doug. Rep.* 91; *Dalrymple vs. Lofton,* 2 *McMullin Rep. (So. Car.)* 112; *Harris vs. Purdy,* 1 *Stew. Ala. Rep.* 231.

In an action of slander for charging the plaintiff with false swearing in giving his testimony, in a cause where there is no dispute as to the facts sworn to, the question, whether the evidence was material to the point in issue, is a question of law to be decided by the Court, and not of fact to be passed upon by the jury, as held in *Power vs. Price, ub. sup.*; and *Steinman vs. McWilliams,* 6 *Barr* 170.

In view of the foregoing, we feel no hesitancy in responding to the question proposed, that it is not actionable to charge a party with false swearing in testifying as a witness, on the trial of a cause, if the testimony charged to be false was not material to the issue involved in the suit in which it was given. As

23

this question is framed upon the first instruction given at the instance of the defendant, we hold that the Court below did not err in giving it to the jury.

2. The other two instructions involve substantially the same point, that is to say: the materiality of the evidence of the plaintiff given before the justice, which the defendant charged to be false, and for which the action was brought.

The controversy before the justice was, the mutual debts of the parties. It is evident from these, that the amounts were within his constitutional jurisdiction. He had, therefore, jurisdiction of the subject matter—the debt claimed to be due from, and to the parties respectively. He had the unquestionable power and authority to administer the oath to the plaintiff in this suit. It was irregular, it is true, for the defendant in the trial before the justice, to propose himself to prove his set-off before he had required the plaintiff to be sworn on the subject, and he had declined. (See *Digest*, *chap.* 95, *sec.* 108, *p.* 656.)

It is said, however, if a party offer himself as a witness before a justice, is sworn and testifies freely, perjury may be assigned on the oath thus taken, though he was incompetent as a witness, provided the justice had jurisdiction of the subject matter. See *Whart. Amer. Cr. Law* 653, *note g*, citing *Montgomery vs. State*, 10 *Ohio Rep.* 226; 10 *John. Rep.* 167; *Whart. Am. Cr. Law* 654 *text*.

But was the testimony deposed to by the plaintiff in this suit in the suit before the justice, in reference to the $20 bet won on the election, material as a defence or pertinent to the issue then depending before the justice in relation to the validity of his off-set? If not, in accordance with the views hereinbefore expressed, though what he may have sworn, in reference to this bet, was strictly true, yet a charge of it being false, does not constitute slander in legal parlance, or subject the defendant in this suit to a recovery on account of the false charge of the plaintiff's untruthfulness in this respect.

It must be borne in mind, in considering and disposing of this branch of the case, that the item, to which the plaintiff

was called upon to testify, and about which he did depose, and which the defendant pronounced false, and declared that he had sworn falsely in reference to, and which is charged to be the slander complained of in the suit, was thus stated in the account filed in off-set with the justice before whom the suit was depending, *to wit:* " The amount won on the senatorial election, August 1852, $20." It should also be recollected that the witnesses, who testified in the Court below, as to the speaking of the words complained of, understood the defendant to have reference to so much of the evidence of the plaintiff given before the justice, as pertained and had reference to the $20 item. With these facts impressed upon us, we will proceed to the investigation and solution of the question at hand.

It is asserted that sections 1 and 4, of chapter 77 of the Digest, render it unlawful to bet or wager upon the result of any election. These sections are not prohibitory on the subject. The 1st section was designed and intended by the Legislature to afford to persons who may have lost money or property upon any bet or wager, a remedy for its recovery within a prescribed period. The 4th section was simply intended to declare void all judgments, conveyances, bonds, bills notes, securities and contracts, where the consideration, or any part thereof, is property, or money won at, or on any wager, etc. It would seem from these provisions that the Legislature must have supposed that the gambling act prohibited every possible wager, or else that some special or particular act had been passed prohibiting betting on the result of elections in this State. We have examined with great care, and have been unable, to this time, to find any law prohibiting wagering on elections, except in the case of judges and clerks. But was such an act absolutely necessary, to render the laying of money or property on elections virtually prohibited in this State? We apprehend not. In *Jeffrey vs. Ficklin & Bennett,* 3 *Ark.* 325, this Court, by DICKINSON, J., said: " Wagers, contrary to public policy, that are immoral, or affect the feelings, interests or characters of third persons, are contrary to sound policy, and are not recoverable

at law. In a country where elections are frequent and free, as in this, every means should be adopted to maintain them pure. Wagers operate on the passions, and influence the parties, by the strongest motives of pecuniary interest, to support and induce others to vote for the same person. The freedom of choice and unbiased action is destroyed. The disposition to elect men for their integrity and capacity, no longer exists. The corrupting influence proceeding from this means of gambling, is, unfortunately felt to a very great extent by every class of society. The consequences resulting from it are to be deeply deplored, and therefore it is, that the courts uniformly discountenance actions when they are founded in iniquity and injustice," citing *Allen vs. Hearne*, 1 *Tenn. Rep.* 56, and *Yeates vs. Foot*, 12 *John. Rep.* 1: but this last case does not sustain the views of the judge.

In *Viser vs. Bertrand*, 14 *Ark. Rep.* 276, WATKINS, C. J., in his opinion said: " And there being such evidence, [evidence to the effect that part of the money sued for, had been advanced by the appellee for the appellant collusively to induce the husband of the appellant to consent to a divorce,] it was not only the *right*, but the *duty of the Court to have interposed of its own motion*, and put it to the jury to say whether this taint entered into, and formed any part of the consideration for which the three hundred dollars were paid, and to have charged them, that if they so found, the plaintiff, as to so much of his demand, could not recover. Because, otherwise, if both parties to an immoral contract were content not to raise such an objection, the courts might be compelled to adjudicate their alleged rights under contracts of that description, which the law would neither enforce nor rescind." And to the same purport, on this point, were the opinions of Justices SCOTT and WALKER, delivered *seriatim*. See, also, *Rust vs. Gale*, 9 *Cow. Rep.* 172; *Bunn vs. Rucker*, 4 *John Rep.* 426; *Wheeler vs. Spencer*, 15 *Cow. Rep.* 28, and the various cases referred to by the counsel for the appellee in his brief on this point.

The result of the authorities, both English and American,

clearly is, that no right of action can spring out of an illegal contract; and this rule applies not only where the contract is expressly illegal, but wherever it is opposed to public policy, or founded on an immoral consideration, and it is quite manifest that a court of justice can give no assistance to the enforcement of contracts which the law of the land has interdicted. See *Ex parte Dyster*, 2 *Rose* 351; *Jaques vs. Whitby*, 1 *H. Bla.* 65.

An unlawful agreement, it is said, can convey no rights in any Court to either party; and will not be enforced at law or in equity in favor of one against the other of two persons equally culpable; Per Lord BROUGHAM C. in *Armstrong vs. Armstrong*, 3 *My. & K.* 64,

The principle, on which the rule here laid down depends, is, as stated by Chief Justice WILMOT, the public good. "The objection," says Lord MANSFIELD, in *Holman vs. Johnson*, *Cowp.* 343, " that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the latter. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice between him and the plaintiff—by accident, if I may so say. The principle of public policy is, *Ex dolo malo non oritur* B R A R Y. *actio*. No Court will lend its aid to a man, who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appear to arise *ex turpi causa*, or a transgression of the positive law of this country, then the Court says he has no right to be assisted. It is upon that ground that Courts go, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

Having laid down the foregoing propositions of law, as well as having given the reasoning and illustrations of several learned judges on the same subjects, we will proceed to apply them to the case before us, with the view of announcing the conclusion to which our minds have arived, predicated as that

HARVARD LAW SCHOOL LIBRARY

conclusion is believed to be, upon the application of these principles.

The set-off filed by the plaintiff before the justice, contained intrinsic evidence of itself, that the item of $20, won on the Senatorial election, August, 1852, was such a demand, as could not, under any state of the case, be the subject of a legal demand in his favor. The justice, upon the issue before him, had but to enquire as to the mutual indebtedness of the parties to each other on their respective accounts. If no liability, on the grounds of public policy, could arise on a wager, or an amount won on the result of an election, and that fact was made manifest " from the plaintiff's own showing" in his bill of particulars filed as an off-set, why swear the plaintiff on the subject? The office of testimony, in the administration of justice by courts, is to elicit the truth in respect to the issues pending before them. The plaintiff having made a demand for $20, in the manner shown, the portals of justice were closed to him in respect to that item. When the facts came to the notice of the justice by inspection, the item was virtually expunged from the off-set, as though it never had been embraced in it, and from that time forward, he, as a magistrate of the law, exercising limited and restricted judicial functions, could not legitimately prosecute an enquiry in relation to that item. A wager on an election does not impose upon the loser any legal liability, for the reason, that to wager is against public policy; and for the same reason, it does not confer on the winner a right of action. A wager is no contract. It possesses none of the elements of an obligation arising from contract. If it is no contract, though the sum won or lost may be within the limits of the amount of which justices of the peace have jurisdiction, arising upon contracts, we apprehend they could no more take cognizance or jurisdiction of an amount won on elections or cards, than they could of an amount claimed as damages for a trespass on the person, property or lands of another, provided it were less than one hundred dollars—the constitutional limit of their jurisdiction on demands arising on contracts. If we are right in this view,

and of which we entertain no doubt, it follows as a consequence, that the testimony of the plaintiff given before the justice in relation to the $20 bet, won on the senatorial election in August, 1852, which was charged by the defendant to be false, and for which the slander is alleged in the declaration, was irrelevant and immaterial to the issue. Courts acting on the same principles of policy which combine to render demands founded on wagers void, uniformly, whenever the fact is ascertained, whether from the face of the demand itself, as in the instance before us, or from evidence extrinsic, refuse absolutely to take cognizance of such demand, except to declare it void. This principle is announced in *Viser vs. Bertrand*, and *Holman vs. Johnson, ub. sup.* In fact, these cases go farther than we have thought proper to state the principle here. They declare that Courts have not only the *power* to dismiss actions founded on such demands, but that *it is their absolute duty to do so*.

Entertaining the views expressed under this head we feel no hesitancy in declaring that the second and third instructions given at the instance of the defendant, were properly given.

It having been held that the Court below did not err in giving either of the instructions moved for by the defendant, it follows as a consequence that the Court below did not err in declining to give those proposed by the plaintiff.

Finding no error in the record, the judgment of the Washington Circuit Court in this behalf is in all things affirmed at the cost of the appellant.